## FLETCHER *et al.* v. ARNETT *et al.*

1. Where father and son enter into an agreement with G. by which they agree to convey to G. a tract of land in Nebraska owned by the father, and a tract of land in South Dakota owned by the son, and by the same agreement G. agrees to convey to the father and son a tract of land in Kansas on which there is a $6,000 mortgage, and in which agreement there is a recital: "Whereas, there is now a mortgage upon said above described land * * * for six thousand dollars ($6,000,) which said second party [G.] is to cause to be paid off and discharged,"—*held*, that this constitutes a distinct admission that G. had agreed to pay off said mortgage on the Kansas land as a part of his contract, and that a failure to so pay off the mortgaee by G. and a denial of his liability to pay off said mortgage, entitled the father and son to rescind the contract.

2. Said agreement contained the following clause, in substance: "But in case said G. shall fail to deliver a release of the mortgage, and a receipt for $1,040 cash, to the parties with whom deed was to be deposited, on or before the first day of July, 1891, then the said G's right to said [Nebraska] land shall be forfeited, and the same shall be returned to the father." *Held,* that under this clause G. could not relieve himself from his liability, to pay off and discharge the $6,000 mortgage, as a part of his contract, by a failure to deliver a release and to pay the $1,040, and permitting the deed to the Nebraska land to be returned to the father, and that a failure by G. to pay off the mortgage and $1,040 cash entitled the father and son to rescind the contract.

3. By the terms of said agreement the said G. agreed to convey to the said father and son, or to such persons as they might direct, "by good and sufficient warranty deed," the Kansas land, without any clause excepting from such warranty the $6,000 mortgage. *Held,* that a deed containing a warranty of title, and against incumbrances "excepting a mortgage for $6,000," did not comply with the terms of the agreement, and the exception inserted was without authority, and the parties were under no obligation to accept the same.

4. A contract on the part of father and son to convey land owned by the
father individually, and land owned by the son individually, to a party
who agrees to convey a tract of land on which there was a mortgage,
but who agrees to pay off and discharge said mortgage and pay $1,040
cash, constitutes an entire contract, although there may be a clause in
the contract that in case the mortgage is not paid off, and the $1,040
cash not paid, the deed to the land conveyed by the father shall be re-
turned, and the party's right to such land be forfeited. The forfeiture
clause does not relieve the party from his express contract to pay off
the mortgage.

(Syllabus by the Court. Opinion filed Feb. 7, 1894.)

Appeal from circuit court, Turner county. Hon. E. G.
SMITH, Judge.

Action to rescind a contract and for other relief. There
was judgment for plaintiffs, and, from an order denying a new
trial, defendants appeal. Affirmed.

The facts are fully stated in the opinion.

*A. B. Melville* and *G. H. Goddard,* for appellant.

The writing in suit contains two separate contracts. By
the first contract Greeley agreed to deed the Kansas land
upon which there was a mortgage of $6,000 to the Fletchers,
and the Fletchers agreed to deed the Dakota land to Greeley,
possession in each case to be delivered before June 1st; by
the second contract if Greeley took up the mortgage on the
Kansas land and paid $1,040, he was to have a deed to the tract
of land in Nebraska, but if he did not take up the mortgage
within the time fixed, C. S. Fletcher might withdraw the deed
to the same, and Greeley was to forfeit all right to said deed.
One writing may contain two or more separate and severable
contracts. 2 Par. Cont., 517; Spear v. Snyder, 13 N. W. 910;
Tipton v. Feituer, 20 N. Y.; Winn v. McDonald, 39 N. Y. 233;
Denning v. Kemp, 4 Sanford, 147; Swift v. Updike, 43 Barber,
274; Badger v. Whitcomb, 26 Am. Dec. 611; Goldborogh v.
Ohr, 21 U. S. 215; Polluck v. Brush Co., 128 U. S. 74.

The deeds to the Dakota and Kansas lands having been de-
livered the contract will not be rescinded and the remedy of C.

S. Fletcher is to proceed at law for any damages sustained Kimball v. West, 820 So. 96; Caval Co. 31 N. Y. 91.

. After the delivery of the deeds to the Dakota land to Greeley he sold portions of said land to Sarah Shaffer and Caroline Carpenter. These parties purchased the land in good faith, and there is no evidence to the contrary. They were innocent purchasers. Jackson v. Valkenburg, 8 Cow. 260; Jackson v. Green, 8 Johnson, 137; Van Renssloers v. Akin, 22 Wait. 554; Varick v. Briggs, 6 p. 323; Sprague v. White, 35 N. W. 761.

Parol evidence is admissible to explain and to apply but not to contradict or vary a contract. A writing may be read in the light of the surrounding circumstances in order that the true intent and meaning of the parties may be arrived at. Robinson v. Bennett, 18 Fla. 602; Emery v. Webster, 42 Me. 204; Knight v. N. E. Worsted Co., 2 Cushing, 271; Barnabee v. Suaer, 18 La. An. 148; Pierson v. Bank, 77 N. Y. 304; Spencer v. Babcock, 22 Barb, 326; Reader v. Helms, 57 Ala., 440; Phelps v. Bostwick, 22 Barb. 314. The surroundings of the parties and the relation of the parties to one another may be shown by parol as helps in the interpretation and understanding of the contract. Bishop on Cont., Sec. 372; Woods Pract. Ev. Sec. 25; Greenleaf's Ev. Sec. 297; Addison Con. 7 Ed. 164; Mayland v. Railroad, 22 Wal. 105; Dodge v. Gardiner, 31 N. Y. 329; Ins. Co. v. Clinton, 66 N. Y. 326; Clark v. Ins. Co., 64 N. Y. 33; Pollard v. Maddox, 28 Ala. 321; Summer v. Williams, 8 Mass. 162; Price v. Evans, 26 Mo. 30; Codman v. Johnson, 104, 491; Masters v. Freeman, 17 Ohio St. 323; Hutchins v. Hubbard, 34 N. Y. 24; Webster v. Blount, 39 Mo. 500; Salisbury v. Andrews, 19 Pick. 250; Farmers Loan Co. v. Bank, 13 Wis. 424; Williamson v. McClure, 1 Wright, 402; Tracy v. Chicago, 24 Ill. 500; Aldrich v. Aldrich, 135 Mass. 153; Rockwell v. Humphrey, 57 Wis. 410; Lacy v. Green, 3 Norris, Pa. 514; Crawford v. Elliott, 78 Mo. 497; Pratt v. Cotton Co., 51 Miss. 470; Railroad v. Jurey, 111 U. S. 584; Knick v. Knick, 75 Va. 12; Stewart v. Smith, 3 Bax-

ter, 231; Carmichiel v. White, 11 Heisk, 262; Spaulding v. Coon, 56 Mich. 622. Parol evidence is admissible to show the facts and circumstances of the whole transaction, even independent and collateral facts about which the contract itself is silent. Keogh v. McNitt, 6 Minn. 513; Good v. Martin, 95 U. S. 95; Bruce v. Wright, 3 Hun. 548; Harrison v. McKim, 18 Ia. 485; Skinner v. Church, 37 Ia. 91; Davis v. Brown, 94 U. S. 423; Johnson v. Martinus, 9 N. J. Law, 144; Bank v. Comley, 2 Miles, 405. Not only surrounding circumstances but the subsequent conduct and acts of the parties, are material and competent to show the actual interpretation which the parties themselves have put upon the contract, and also what conditions they have waived. Acker v Bender, 33 Ala. 230; Cross v. Pearson, 17 Ind. 612; Grant v. Lathrop, 23 N. H. 67; Halstead v. Meeker, 15 N. J. Law, 136; Haldeman v. Chambers, 19 Tex. 1; Conner v. Carpenter, 28 Vt. 237; Ratcliffe v. Allison, 3 Rand. 537; Sigerson v. Cushing, 14 Wis. 527; Carmony v. Hooker, 5 Penn. 305; Knight v. Worsted Co., 2 Mass. 271.

It is also competent to show by legal evidence the pre-existing and contemporaneous facts and circumstances attending the negotiations of the parties in making the contract, as such facts will throw light upon the disputed contract itself. Bank v. Clark, 28 Vt. 325; Lyon v. Kidder, 28 Vt. 42; Wigram on Extra Evidence, 57, 138.

The defendants were entitled to a jury trial upon the issue of fact as to whether the plaintiffs acted promptly in rescinding the contract. McNevin v. Livingston, 17 Johnson, 437.

*Bartlett Tripp, L. C. French* and *Robert J. Gamble,* for respondents.

The writing in suit is an entire contract. The only ground upon which the defendants claim it to be severable is the fact that it provides for a forfeiture for failing to lift the Kansas mortgage. Providing for a forfeiture is never a severance of the contract, and never confines the parties to the remedy pro-

vided for in the forfeiture. Comp. Laws, Sec. 4623. The only possible theory upon which the defendant can predicate his claim is that the contract was an alternative one and that its true interpretation gave the defendant the option to lift the mortgage on the Kansas land and accept the deed of the Nebraska land, or to fail to lift it and allow it to be returned to the grantor. This theory, if it have any foundation must be based upon the fact that the penalty or forfeiture is in the nature of liquidated damages, and being such gives the defendant the alternative of forfeiting his contract or violating it and paying the damages. When it is conceded that there is no alternative agreement expressed, the forfeiture clause must be construed either as in the nature of a penalty or liquidated damages. The insertion of penalty, forfeiture or liquidated damage clauses in a contract do not convert it into an optional one. 1 Sutherland Dam. 477; Crane v. Peer, 43 N. J. 433; Howard v. Hopkins, 2 At. 371; Hobow v. Tudor, 2 P. Williams, 191; Ayres v. Pease, 12 Wend. 363; Dooley v. Watson, 1 Chay, 414; Chellesim v. Chellesim, 2 Ves. Sen. 528.

The facts as offered in evidence are all in support of an entire contract.

Irrespective of plaintiff's possession the defendants, Arnett, Carpenter, Schafer and Mrs. Greeley were charged with such notice as would put them upon inquiry. Arnett and Mrs. Greeley are charged with actual notice as parties to the transfer. Mrs. Carpenter was present when the trade was talked over and received the deed from her daughter with no proof of being a grantee for a valuable consideration and without notice; and the same is true of the conveyance from Arnett to his mother. This relationship alone in absence of proof of a valuable consideration and want of actual notice is sufficient evidence of notice to sustain a finding that they had notice. Trifts v. King, 18 Post, 157; Wade on notice, Sec. 25; Boon v. Chile, 10 Pet. 177. The possession of the plaintiffs was sufficient to put the defendants on inquiry. Letcher v. Betts, 46 N. W. 196.

CORSON, P. J.   This was an action to rescind, and have declared null and void, a certain contract entered into between the plaintiffs S. C. Fletcher and C. S Fletcher, parties of the first part, and D. P. Greeley, Jr., party of the second part, on the 19th day of May, 1891; and also to have declared null and void and canceled, certain conveyances made thereunder.   The circuit court rendered judgment for the plaintiffs, a motion for a new trial was made and overruled, and from the judgment and order denying a new trial the defendants appealed.

The material parts of the agreement in controversy in this action are as follows:   "That the said parties of the first part have this day sold and traded, and agreed to convey and cause to be conveyed, by good and sufficient warranty deed, to such parties or party as the second party shall direct, the following described real estate situated in the county of Boone, in the state of Nebraska, to-wit: * * *; and also the following described real estate situated in the county of Turner and State of South Dakota; * * * In consideration whereof said second party has this day sold and traded, and agreed to convey and cause to be conveyed, to said first parties, as said first parties may direct, by good and sufficient warranty deed, the following described real estate situated in the county of Woodson and state of Kansas: * * * And it is further agreed, by and between said first and second parties, that whereas, there is now a mortgage upon the said above described land in said Woodson county for the sum of six thousand dollars ($6,000.00), which said second party is to cause to be paid off and discharged, the said deed to the Nebraska land above described shall be, when signed and acknowledged, deposited with Stephenson and Hoagland, attorneys, at Yates Center, Woodson county, Kansas, to be by them held and delivered as hereinafter provided.   When the said D. P. Greeley shall deliver to said Stephenson and Hoagland a full release of the said mortgage, on or before the first day of July, 1891, together with a receipt from said C. S. Fletcher for the sum of one thousand and forty dollars,

then the said Stephenson and Hoagland shall deliver said deed to said Nebraska land to said D. P. Greeley, Jr.; but in case said D. P. Greeley, Jr., shall fail to deliver said release and receipt to said Stephenson and Hoagland on or before said first day of July, 1891, then said D. P. Greeley's right to said land shall be forfeited, and the same shall be returned to said C. S. Fletcher, or his order, on demand, to said Stephenson and Hoagland, without notice to said D. P. Greeley, Jr. And it is further agreed, by and between the said parties hereto, that said parties shall deposit all other deeds herein provided for, to-wit, the deeds to South Dakota land and said Kansas land, with said Stephenson and Hoagland; and, when the said Stephenson and Hoagland have in their hands the deeds to said South Dakota and said Kansas lands, they shall deliver them to said first parties, or either of them, on demand, all deeds to said Kansas lands, and to said second party, on demand. all deeds to said South Dakota lands. And it is further agreed that said first parties are to deliver to said second parties the said South Dakota lands, and said second party is to deliver to said first parties the said Kansas land, all on or before the 15th day of June, 1891; and the right of said second party to the possession of said Nebraska land shall accrue upon the delivery to him of the deed thereto as above provided, and not otherwise." The mortgage referred to in the third paragraph was not paid off, and the $1,040 cash referred to in the same paragraph was not paid, and therefore the said C. S. Fletcher withdrew his deed for the Nebraska land, and the Fletchers notified the defendant Greeley that they rescinded the contract, and demanded the possession of the Dakota property, of which said Greeley had taken partial possession. The learned counsel for the appellants contend that the agreement embraces two contracts—one for the exchange of the Dakota and Kansas land, deeds for which were to be delivered June 15th, and the counsel say: "At the same time Greeley and C. S. Fletcher made another contract that

was embraced in the same writing, to-wit: If, at any time before July 1st, Greeley took up the mortgage on the Kansas land and paid $1,040, he was to have a deed of 640 acres of land in Nebraska; but if he did not take up the mortgage by that date, C. S. Fletcher might withdraw deed to same, and Greeley was to forfeit all right to said deed. This contract was separate and distinct; it was was to be performed at a different time. It prescribed the penalty for failure to take the land. This latter contract is a contract by C. S. Fletcher to sell the Nebraska land, and take as his pay, the cancellation of the Kansas mortgage." The learned counsel for respondents contend that the contract is an entire one—an agreement on the part of the the Fletchers to trade the Dakota and Nebraska lands for the Kansas farm, freed from the mortgage and the payment of $1,040 cash; and that the parties so understood the contract, or at least the Fletchers so understood it, and Greeley knew they so understood it, at the time the contract was made. The main objects of courts in construing contracts should be to arrive at the intention of the parties, and to carry out that intention when it can be done consistently with the language of the contract itself. Section 3551, Comp. Laws, provides that "a con tract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of the contracting, so far as the same was ascertainable and lawful;" Section 3562 provides that "a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates;" and Section 3564 provides. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of the making it that the promisee understood it."

The first question, therefore, for this court to determine, is what was the actual intention of the parties at the time the contract was made? Reading the contract in the light of the surrounding circumstances, it seems to be clear that the intention of the Fletchers was to trade the Dakota and Nebraska lands

for the Kansas lands, free and clear of the mortgage, and that
Greeley knew the Fletchers so understood it at the time the
contract was made. The Fletchers were father and son. S. C.
Fletcher, the son, and his brother and sister, were the owners
of a half section of land in South Dakota, used as a farm, and
on which the brothers resided. The sister resided in Kansas.
C. S. Fletcher, the father, resided in Illinois, and owned a sec-
tion of land in Nebraska. And D. P. Greeley had control of a
section of land used as a farm in Kansas, and on which he re-
sided, and upon which there was a $6,000 mortgage. In the
spring of 1891 there were negotiations between the Fletchers
and Greeley, resulting in the agreement above set forth, and
the construction of the third paragraph of which is involved in
this action. The circumstances under which the contract was
prepared is thus stated by Mr. Stephenson, who drafted it, and
who was examined as a witness on the part of the defendants:
"Mr. Greeley came into my office with S. C. Fletcher and C. S.
Fletcher, his father, and stated to me in their presence, that
he had been talking up a trade with these parties; that they
had agreed upon the price of the lands they talked of trading;
that they were to trade him a half section of land in South Da-
kota at $6,000, and a section of land in Nebraska, and he was
to trade them his ranch, and asked me if I could tell them
how to make their contract so as to close the trade, as they
wanted him (Greeley) to pay off the mortgage on the land,
which he could not do just at that time, and they wanted me to
tell them how they could close their trade now, and still leave the
Fletchers safe in case he (Greeley) should fail or be unable to
pay off the mortgage on the Kansas property." After talking
over the matter for a time Mr. Stephenson says he suggested
the plan adopted. It is quite apparent that the intention was
that both the Fletchers, father and son, were to be made safe,
and not C. S. Fletcher, the father, only. It further appears
that the object the Fletchers had in view was to bring the fam-
ily, then residing in three states, together, and enable the

father to live near his children, and to secure such a home by exchanging the Dakota and Nebraska property for the one in Kansas, free from the mortgage and incumbrance. Mr. Greeley was fully informed of the purpose of the Fletchers before the contract was signed. A day or so after the contract was executed Mr. Greeley promised the Fletchers that he would go immediately to Iowa, where, he stated, he had land for which he had been offered $9,000 and sell it, and pay off the mortgage and make the cash payment. From time to time up to about July, Greeley repeatedly stated to S. C. Fletcher that he would go to Iowa and make the sale spoken of, and he frequently spoke of expecting a letter or telegram informing him of the sale. Up to that time Mr. Greeley did not claim or intimate that he was not to pay off the mortgage as a part of his contract. The Fletchers at all times insisted upon the payment of the mortgage as a part of the contract. They refused to give up the possession of all the Dakota farm until the mortgage was paid off and the cash payment made, and, when they discovered that Greeley did not intend to fulfill his contract in that respect, they at once notified him that they rescinded the contract. The acts, conversations and conduct of the parties plainly indicated that up to about July, both parties apparently gave the same construction to the terms of the contract, namely, that Greeley was to lift the mortgage and pay the $1,040 cash as a part of the contract. If Greeley understood it differently, he did not make that fact known to the Fletchers, and it is quite certain that he knew they so understood it from the time it was executed. We think there can be no doubt that it was the intention of the Fletchers to exchange these Dakota and Nebraska properties for the Kansas land free and clear of the mortgage and the payment of the $1,040 cash, and that Greeley knew that such was their intention, and that the Fletchers fully understood that the contract was so drawn as to carry out that intention.

Is the language of the contract such as to preclude the

court from so construing it as to carry out the manifest intent of the parties? The construction contended for by the appellants would make the contract a most singular one. It would be a joint contract of the two Fletchers with Greeley as to the Dakota and Kansas lands, but an indvidual contract between C. S. Fletcher (the father) and Greeley as to the Nebraska land, payment of the mortgage and the $1,040 cash. Yet, whether the mortgage was paid off or not or the Nebraska land conveyed, C. S. Fletcher would still have a one-half interest in the Kansas land. But we are of the opinion that the contract cannot be so construed by its terms. Looking at the contract itself, it seems to us it is not susceptible of the construction claimed for it. It will be noticed that in the third paragraph there is the following recital: "Whereas, there is now a mortgage upon said above described land * * * for the sum of six thousand dollars, which said second party is to cause to be paid off and discharged." Here is a distinct admission that Greeley had agreed to pay off and discharge the mortgage; not that he might or might not do so at his option, but which the said second party "is to cause to be paid off and discharged." This recital, taken in connection with the testimony of Stephenson that Greeley said, "as they wanted him (Greeley) to pay off the mortgage on the land, which he could not do just at that time," makes it perfectly clear that Greeley had agreed to pay off the mortgage. The statement of Greeley to Stephenson, in the presence of the Fletchers, and the recital in the contract are entirely inconsistent with the theory of the appellants that Greeley simply had an option whether or not to pay off the mortgage and accept the conveyance of the Nebraska property. Nothing in his statement to Stephenson, and nothing in the recital, indicates any such agreement or understanding between the parties, but, on the contrary, they show as plainly as language can express it, that it was a part of the contract that Greeley should pay off the mortgage.

VOL. 4, S.D.—40

Again, in the agreement on the part of Greeley to convey
the Kansas property, there is no clause or language indicating
that the same was to be conveyed subject to the mortgage in
any contingency, but he binds himself to convey "by good and
sufficient warranty deed. No exception in the warranty is stip-
ulated or provided for. His deeds made to the plaintiffs, con-
taining the exception as to the $6,000 mortgage in the clause of
warranty, was not in accordance with the contract, and the ex-
ception was unauthorized by it. Had the plaintiffs agreed to
take the property in any event subject to the mortgage, this
was the proper place in which to insert the exception. The
fact that none is inserted is strong evidence that none was in-
tended. There is certainly nothing in the contract, then, that
in direct terms gives Greeley an option or the alternative right
to take, or not take, the Nebraska property, as contended for
by appellants. The claim, if it has any foundation, must be
based upon the fact that the penalty or forfeiture is in the na-
ture of liquidated damages, and, being such, it gives the de-
fendant the alternative right of fulfilling his contract, or violat-
ing it and paying the penalty, to-wit, forfeiting his right to the
Nebraska land. The forfeiture clause must be construed either
in the nature of a penalty or as liquidated damages. But, if
construed as liquidated damages, the party is not relieved from
the performance of his express contract to pay off the mort-
gage, which, by his statement to Stephenson and the recital in
the contract, he fully admits he had agreed to do by paying the
liquidated damages or penalty, namely, forfeiting his right to
the Nebraska lands. A party cannot escape the performance of
his express contract by payment of the penalty, or in that way
discharge himself from liability to perform. Mr. Sutherland,
in his work on Damages, says. "Stipulating the damages, and
promising to pay them in case of default, in the performance of
an otherwise absolute undertaking, does not constitute an al-
ternative contract. The promisor is bound to perform his con-
tract, though there is generally a practical option to violate it

and take the consequences; but he is entitled to no election to pay the liquidated damages, and thus discharge himself." 1 Suth. Dam. § 477; Crane v. Peer, 43 N. J. Eq. 553, 4 Atl. 72; Ayres v. Pease, 12 Wend. 393; Daily v. Litchfield, 10 Mich. 29; Whitney v. Stone, 23 Cal. 275; Ropes v. Upton, 125 Mass. 258; Lyman v. Gedney, 114 Ill. 388, 29 N. E. 282. The penalty clause in this contract was inserted at the suggestion of Stephenson, not of Greeley or the Fletchers, and was intended, not to protect Greeley or make the contract alternative as to him, but to protect the Fletchers, and as security that the contract already made by Greeley would be carried out; not to vary or change the written contract in which it is recited that Greeley was to pay off and discharge the mortgage, but to strengthen and protect the contract made by the parties themselves. We are of the opinion that the penalty clause in this contract cannot be construed as intended to provide for liquidated damages, but is in the nature of a penalty only. Section 3582, Comp. Laws. But, if it were otherwise, we are of the opinion that the contract is an entire one, and that the payment of the mortgage and the $1,040 cash was a part of the consideration to be paid for the Dakota and Nebraska lands; and that, when Greeley refused to pay off the mortgage and the $1,040 cash, the plaintiffs had a right to rescind the contract, and refuse to take the Kansas lands subject to the mortgage. There was, through the fault of Greeley, a failure of consideration in a very material part.

It is further contended by appellants that, if it was an entire contract, the plaintiffs had no right to rescind, as it was executed, as far as the Dakota and Kansas lands were concerned, the parties having executed deeds, and the deeds to the Dakota property having been delivered. But we cannot agree with appellants in this contention. It was not an executed contract, but only executed in part. Section 3589, Comp. Laws, provides that "a party to a contract may rescind the same in the following cases: * * * 2. If through the fault

of the party as to whom he rescinds the consideration for his obligation fails in whole or in part. * * * 4. If such consideration, before it is rendered to him, fails in a material respect from any cause." In this case, as before stated, the consideration failed in a material part. The failure to pay the mortgage and the cash agreed upon, and inserting in the deed the exception of the mortgage, and repudiating the contract on his part by Greeley, were sufficient to authorize the Fletchers to rescind the contract, they restoring all they had received under the same. This they seemed to have done. They had never accepted the deed of the Kansas farm, and they authorized the parties holding them to return them to Greeley. They rescinded promptly. As soon as they discovered that Greeley not only had not paid the amount agreed on, but refused to do so, and denied his liability to pay, they gave him notice that the contract was rescinded. In this the Fletchers strictly complied with the law. We are of the opinion, therefore, that the decision of the learned court was correct, and the judgment is affirmed. All the judges concurring.