## BOTSFORD LUMBER COMPANY, Appellant, v. SCHRIVER et al, Respondents.

### (206 N. W. 423.)

(File No. 5474.    Opinion filed December 9, 1925.)

1. **Mechanics' Liens — Contracts — Materials Bought Under Oral
   Agreement, by Which Supplier of Materials Agreed to Deliver
   as Called for and to Charge Against Owner's Account, Held
   Not Bought Under One Entire Contract.**

   Materials bought from time to time under oral agreement,
   by which supplier of materials agreed to deliver them to own-
   er's employees as called for and to charge against owner's
   account, held not bought under one entire contract.

2. **Sales—Contracts—Oral Agreement by Owner of Land With Sup-
   plier of Materials, Whereby Latter Agreed to Make Deliveries
   of Materials as Needed, Held Not Contract of Sale Consum-
   mated at Time of Such Agreement.**

   Oral agreement by owner of land with supplier of materials,
   whereby latter agreed to make deliveries of materials as need-
   ed, held not contract of sale within Rev. Code 1919, Sec. 925,
   consummated at time of such agreement where no specific
   goods were ordered, set aside, or determined on, and no actual
   sale was made until the item was delivered.

3. **Mechanics' Liens—Single Lien Satement May Include All Items
   Contributing to Continuous Transaction.**

   Where the process of building construction and the delivery
   of items of materials therefor is reasonably continuous, a
   single lien statement may include all items contributing to the
   continuous transaction.

4. Mechanics' Liens—Party Claiming Lien Cannot Tack Two Separate Contracts and Have Right to Lien for Both by Filing Within Specified Time After Last Delivery on one of Contracts.

Party claiming a lien cannot tack two separate contracts and have right to lien for both by filing of claim within specified time after last delivery on one of contracts.

5. Appeal and Error—Findings—Findings Supported by Evidence and Against Which Evidence Does Not Preponderate Will Not Be Disturbed by the Supreme Court.

Findings of trial court, supported by evidence, and against which evidence does not preponderate, will not be disturbed by Supreme Court.

6. Mechanics' Liens—Improvement on Land, Completed in May, and Building of Garage Thereon in August, and Purchase During Such Interval of Material for Other Land, Held Two Distinct Transactions Within Mechanic's Lien Statute.

Erection by owner of improvement on land, which was completed in May, and building of a garage thereon in August, during which interval he purchased material for other land, held not one continuous transaction, but two distinct transactions, within mechanic's lien statute, which could not be tacken together; and hence lien statement, filed in time to preserve the lien for the garage material, did not also preserve lien against first improvement.

7. Mechanics' Liens—Notice is Vital to Liens Under Mechanic's Lien Statute.

Notice is vital to liens under Rev. Code 1919, Sec. 1649, read in connection with section 1646, relative to bona fide purchasers or mortgagees.

8. Mechanics' Liens—Mechanic's Lien Attaches As Soon As Material or Labor is in Evidence on Land.

Mechanic's lien, within Rev. Code 1919, Sec. 1649, attaches as soon as material or labor is in evidence on the land.

9. Mechanics' Liens—Material or Labor in Evidence on Land is Notice to Public of Fact of Furnishing of Such Material or Labor.

Material or labor in evidence on the land is notice to public of fact of furnishing of such material or labor within Rev. Code 1919, Sec. 1649.

10. Mechanics' Liens—Mechanics' Liens Persist Until 90 Days After Completion of Improvement.

Under Rev. Code 1919, Sec. 1649, a mechanic's lien persists until 90 days after the completion of the improvement; the presence of a recently finished building or improvement serving to put the public on inquiry up to that time.

11. **Mechanics' Liens—That After Expiration of 90-Day Period Another Structure is Begun Does Not Extend Lien Arising From First Improvement Long Since Completed.**

That after the expiration of the 90-day period within which a party furnishing material or labor may file a lien within Rev. Code 1919, Sec. 1649, another structure is begun, gives notice of the probable inception of a new lien, but does not extend the lien arising from first improvement long since completed.

12. **Mechanics' Liens—Mortgages—Materialman Not Filing Lien Within 90 Days of Completion of Improvement Had No Lien Against Mortgagee With Knowledge of Improvement.**

Under Rev. Code 1919, Sec. 1649, read in connection with section 1646, materialman who did not file lien within 90 days of completion of improvement had no lien as against subsequent mortgagee with knowledge of such improvement.

Appeal from Circuit Court, Hand County; HON. JOHN F. HUGHES, Judge.

Suit by the Bostford Lumber Company against C. E. Schriver and others. From the judgment entered, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Harlan J. Bushfield,* of Miller, for Appellant.

*C. M. Carroll* and *F. R. Fisher,* both of Miller, for Respondents.

(4) To point four of the opinion, Appellant cited: Denniston v. Howell, 197 N. W. 179; Lumber Company v. Murphy, 19 N. W. 898; 27 Cyc. 67; American Bridge Co. v. Honestain, 139 N. W. 619; Payne & Nixon v. Dalvick, 161 N. W. 257; Robertson Lumber Co. v. Swenson, 138 N. W. 984.

Respondent cited: Hoag v. Hay (Ia.), 72 N. W. 525; Stone v. Juvinall, 125 Ill. App. 562; Central Loan and T. Co. v. O'Sullivan, 44 Neb. 834, 63 N. W. 5.

(11) To point eleven, Respondent cited: Smith v. Dunn, 26 S. D. 129, 128 N. W. 493; Valley Lumber & Mfg. Co. v. Driessel (Idaho), 15 L. R. A. (N. S.) 299; Carar and Neff Lumber Co. v. Crogh (Neb.), 143 N. W. 813; Fitzpatrick v. Ernst (Minn.), 113 N. W. 4; Paine & Nixon Co. v. Dahlvick (Minn.), 161 N. W. 257; Villaume Box & Lumber Co. v. Condon, 178 N. W. 492; Denniston Partridge Co. v. Luther, Howell et al, 188 N. W. 664; 27 Cyc. 144.

MORIARTY, C.  This action was begun by the appellant, Botsford Lumber Company, to enforce a materialman's lien against certain land in Hand county.  The record shows the following facts:

In the year 1918 the land in controversy belonged to the respondent M. G. Richardson, and her brother, the respondent C. E. Schriver, was acting as her authorized agent in the handling of the land and the placing of certain improvements thereon.

Shortly prior to November 25, 1918, Schriver had a conversation with Frank J. Weber, who was the agent of the appellant Lumber Company at Miller, S. D.  In this conversation Schriver told Weber that he was about to make some improvements on the land involved in this action, and that he would need a considerable amount of materials therefor.  Schriver testifies that he directed Weber to permit his, Schriver's, men to get the material from plaintiff's yards as they needed it for making the improvements, and to charge it to his account.  This was the only arrangement for the furnishing of the materials.  There was no bill or estimate submitted, and no definite statement made as to what improvements were contemplated.  Employees of Schriver began to get building materials from appellant's yards on November 25, 1918, and continued to do so at frequent intervals from that date until January 13, 1920.  These purchases amounted in the aggregate to $3,024.95, and the purchase price was, in every instance, charged to Schriver.  On August 10, 1919, Schriver paid $500 in cash, and this payment and $66.65 for materials returned was credited on the account.  On January 26, 1920, the appellant filed a lien statement claiming a lien upon the land in controversy for the balance of the above-mentioned account in the sum of $2,458.30.

During the winter of 1918 and 1919 and the early spring of 1919, improvements consisting of sheds, fences, feed shed, hog house, etc., were erected on the land in controversy out of materials furnished by appellant as aforesaid, but the record does not show definitely the date when these structures were completed.  It is undisputed that during the spring and summer of 1919 posts, wire, and other materials to the value of several hundred dollars were furnished by appellant and used by Schriver in improving lands other than the land involved in this case, and

that the price of these materials was charged into the Schriver account without any effort to distinguish between the items so used and those which were used on the land in controversy herein. The charges for these materials used elsewhere make up a considerable part of the sum for which the lien is claimed. Some of the materials charged into the account were used for racks, eveners, and other purposes not contributing to any improvements on the land in controversy. About August 7, 1919, the appellant began to furnish materials for erecting a garage on the land involved herein. These materials were taken from appellant's yard in the same manner as those which had been furnished previously, and the items were charged into the same running account. The charges for materials for this garage amounted to $729, and the last of these items was furnished in December, 1919. The land in controversy was incumbered prior to November, 1918, by mortgages held by the defendants Northwestern National Life Insurance Company, Glen M. Waters, and Thomas H. Dexter. On March 20, 1920, M. G. Richardson mortgaged the land to the respondent H. H. Holmes. On April 10, 1920, she mortgaged it to C. A. Dexter, and this mortgage was thereafter assigned to respondent Thomas H. Dexter. On May 27, 1921, the said M. G. Richardson made a warranty deed purporting to convey the land to H. H. Holmes, but the evidence shows that this deed is in fact a mortgage to secure the same debt secured by the mortgage given to Holmes in March, 1920.

The case was tried to the court, without a jury, and the trial court made findings in accordance with the facts as above stated, the only parts of the findings requiring special mention being the following:

In finding No. 2 the court finds that—

The materials sold and delivered to the defendants M. G. Richardson and C. E. Schriver "were used for the purpose of repairing buildings, erecting separate buildings and improvements on several tracts of land, and for repairing and building of feed bunks, farm machinery such as hay racks, wagon reaches, etc."

In finding No. 4 the court finds that—

The materials which were sold to defendants Richardson and Schriver and were used in improving the land in controversy, "were sold to said defendants, and at their request at divers times

for material to be used for the purpose of building various improvements on said premises, such as cattle shed, board corral, feed house, feed rack, brick or tile garage, and fences."

And in finding No. 5 the court finds:

"The cattle shed, corral and other yard fences used in connection with said shed were commenced in the month of December, 1918, and fully completed in the early spring and not later than the month of May, 1919." And that the material for the garage was furnished and used between August 1st, 1919, and January 13th, 1920, and was of the value of $729.00.

From these findings the trial court entered its conclusions that the appellant is entitled to judgment against defendants Richardson and Schriver in the sum of $2,458.30, that the sales of materials were made by the plaintiff to said defendants under various orders and requests, and that the materials furnished for the garage were the only materials furnished to said defendants, the last item of which was furnished within 90 days prior to the filing of the lien notice, and that the plaintiff is entitled to a lien for the value of the garage material, such lien being junior to the mortgages held by respondents Northwestern National Life Insurance Company, Glen M. Waters, and Thomas H. Dexter, and superior to the claims of respondents Holmes and Hatch. Judgment for the foreclosure of the lien in accordance with these conclusions was duly entered. The appellant moved for a new trial, and, upon the entry of an order denying this motion, appeals from the judgment and the order denying a new trial.

While appellant's brief argues several assignments of error, the brief really presents only two contentions requiring discussion by this court. These contentions are:

First. That all the materials sold by appellant to respondents Richardson and Schriver were sold under a single entire contract, and that, because of that fact, the entire series of deliveries from November, 1918, to January, 1920, should be treated as one transaction, and that the notice filed in January, 1920, was filed in time to make the lien good as to the entire amount.

Second. That because the respondents Holmes and Hatch knew of the erection of improvements and took their mortgages after the filing of the lien statement they were not bona fide purchasers or incumbrancers without notice, and therefore took subject to the lien.

[1]   As to appellant's contention that all the materials were furnished under an entire contract, and that the last item delivered under that contract was not delivered until January, 1920, the record does not support this contention. Appellant says that the only contract was oral, and consisted of Schriver's statement to appellant's agent that he would need a considerable amount of materials for making improvements on this land, and his instructions to appellant's agent that the materials might be delivered to employees as called for and might be charged to Schriver's account. This could not create a contract such as appellant contends for. Schriver did not agree to take any definite amount of material or to pay for it at any stated price, nor did appellant's agent agree to furnish any particular materials at any definite time or at any stated price. Schriver was free to buy his material elsewhere if he saw fit to do so, and appellant was free to refuse to furnish any materials on the proposition made. The only effect of the conversation was to make Schriver and his principal, Mrs. Richardson, liable for the purchase price of any goods actually delivered in accordance with the proposition.

[2]   Nor did this conversation and the subsequent deliveries make the series of deliveries a sale consummated at the time of the conversation. No specific goods were ordered, set aside, or determined upon; therefore no goods were sold. Nor was there any legal or binding agreement to sell or to buy. Section 925 of the Revised Code provides:

"An agreement to sell and buy is a contract by which one engages to transfer the title to a certain thing to another, who engages to accept the same from him, and to pay a price therefor."

[3]   Evidently in the transactions involved herein there was no contract to buy or sell and no actual sale made until an item was delivered, when title passed and defendants Schriver and Richardson became liable for the purchase price. Appellant's contention that all the items were delivered under an entire contract, made by the conversation in November, 1918, is untenable. But this does not mean that a lien statement must be filed within 90 days after the delivery of any particular item in order to make the lien good as to the price of that item. Where the process of construction and the delivery of items therefor is reasonably con-

tinuous a single lien statement may be made to include all items contributing to such continuous transaction.

[4]   In the case of Valley Lumber & Manufacturing Co. v. Driessel, 13 Idaho 662, 93 P. 765, 15 L. R. A. (N. S.) 299, 13 Ann. Cas. 63, the Idaho court discusses at considerable length the question of transactions similar to that involved herein.   And in that case the court holds that where materials are furnished for the same building or improvement, in installments, and at intervals, and the parties intended them to be included in one account and settlement, the entire account will be treated as a continuous and connected transaction, and the time for filing begins to run from the date of the last item.   But the same case also holds that the party claiming the lien cannot tack two separate contracts and have the right to a lien for both by filing within the specified time after the last delivery on one of the contracts.   We believe that these holdings of the Idaho court are sound and should control in the instant case.   But the effect of applying these rules will depend upon the facts in each particular case.   The question of what structures or improvements should be considered as parts of one continuous transaction is the real question in this case.

[5]   The trial court has found that the structures begun in November and December, 1918, were completed not later than May, 1919.   The first item for the garage seems to have been furnished about August 7, 1919.   There is evidence to support the finding that the erections begun in November were completed not later than May, and there is no preponderance of evidence against such findings, therefore the findings will not be disturbed by this court.   Steensland v. Noel, 28 S. D. 522, 134 N. W. 207; State v. Cronin, 30 S. D. 32, 137 N. W. 593; Buchanan v. Randall, 21 S. D. 44, 109 N. W. 513; Frederick Equity Exchange v. Smith, 47 S. D. 137, 196 N. W. 297.

[6]   Can it be considered that the erection of the improvements, completed not later than May, 1919, and the building of the garage, begun in August of that year, were parts of one continuous transaction, so that a lien statement filed in time to preserve the lien for this garage material would also be in time to preserve a lien for the materials in the structures which the trial court found to be completed not later than May?   We do not think so.   It is true that the account shows several items furnished

in May, June, and July, but some of these items were fencing which did not go upon this land, and other items were for hay racks, eveners, repairs, and other articles of which the application is not shown. While these items were properly charged against the defendants Schriver and Richardson, it is evident that prices of items which did not contribute to fixed improvements on the land in controversy cannot be included in the lien. Nor can such items be considered as linking together the construction of the garage with that of the other buildings completed n the spring. If such were the law there would be little safety for purchasers or incumbrancers. We think that the trial court was clearly right in holding that the transactions were distinct and could not be tacked.

As our present lien law was adopted from the Minnesota statute, the decisions of the courts of that state, rendered prior to our adoption of the law, should be given particular consideration by us in construing the statute. The following Minnesota decisions pass upon practically the same state of facts that is presented in the instant case: Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 161 N. W. 257. See, also, the Iowa case of Denniston & Partridge Co. v. Luther, 194 Iowa 464, 188 N. W. 664.

[7-10] As to appellant's contention that respondents Holmes and Hatch are not entitled to priority over the lien because they are not purchasers or incumbrancers in good faith without notice, an examination of our statutes providing for liens of this class will show that our law is materially different from the statutes of some of the other states. In our law there is no provision that the lien statement must be filed within 90 days to make it good against subsequent purchasers or incumbrancers without notice. Section 1649 of the Revised Code provides that—

"The lien shall cease at the end of ninety days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period a statement of the claim therefor be filed with the clerk."

It is not a question of keeping the lien good as against certain classes. It is a matter of the absolute termination of the lien unless the filing is made within the prescribed time. The only connection in which purchasers or incumbrancers are mentioned is in section 1646 of our Code, where it is provided that—

"As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, no lien shall attach prior to the actual and visible beginning of the improvement on the ground."

This is a provision for the protection of such persons, and relates to the inception of the lien, and in no way affects the matter of the time limit for filing. If the lien could attach without notice either by filing or by actual and apparent commencement of the improvement, there would be no protection to purchasers or incumbrancers. And the danger would be practically as great if lienors by furnishing materials furnished for a building begun in August could tack upon the cost of such materials that of materials furnished for a building completed the previous May, and include both in a lien statement filed the succeeding January.

[11, 12]   Notice is vital to these liens under our statute. The lien attaches as soon as the material or labor is in evidence on the land. This being in evidence is the notice to the public. The lien persists until 90 days after the completion of the improvement. The presence of a recently finished building or improvement is held to put the public on inquiry up to that time. But after the expiration of that period the fact that another structure is begun gives notice of the probable inception of a new lien, but it can have no effect in extending a lien arising from the improvement long since completed. Our statute might have been made to provide that the filing should only be required to preserve the lien as against purchasers or incumbrancers without notice, but it does not do so. It provides for the absolute termination of the lien by the failure to file within the limited time.

Respondents contend that appellant lost all right to lien by filing an excessive claim, but there is no evidence of any fraudulent intent to claim more than was due, and, as the respondents have not appealed from the judgment, there is no such question before the court.

Finding no error in the record, the judgment and order appealed from are affirmed.

Note.—Reported in 206 N. W. 423. See, Headnote (1), American Key-Numbered Digest, Mechanics' Liens, Key-No. 132(11), 27 Cyc. 146; (2) Sales, Key-No. 201(1), 35 Cyc. 291, 303; (3) Mechanics' Liens, Key-No. 132(10), 27 Cyc. 145; (4) Mechanics' Liens, Key-No. 132(11), 27 Cyc. 144; (5) Appeal and Error, Key-No. 1012(2), 4 C. J. Sec. 2853; (6) Mechanics' Liens, Key-No. 132(10),

27 Cyc. 144; (7) Mechanics' Liens, Key-No. 197, 27 Cyc. 126; (8) Mechanics' Liens, Key-No. 166, 27 Cyc. 216|; (9) Mechanics' Liens, Key-No. 197, 27 Cyc. 126; (10) Mechanics' Liens, Key-No. 175, 27 Cyc. 218, 219; (11) Mechanics' Liens, Key-No. 175, 27 Cyc. 218; (12) Mechanics' Liens, Key-No. 128, 27 Cyc. 247.

On right to tack different contracts to perform labor or furnish material for purpose of extending time to file Mechanics' Lien, see note in 15 L. R. A. (N. S.) 299.

Necessity of delivery upon the premises of material sold to contractor as essential to Mechanics' Lien, see note in L. R. A. 1915E, 302.