BRODSKY, Plaintiff and Respondent

v.

MALONEY et al., Defendants and Respondents; WALTON SHEET METAL et al., Defendants and Appellants and MARCOE, Defendant.

(105 N.W.2d 911)

(File No. 9811. Opinion filed November 15, 1960)
Rehearing denied January 11, 1961.

**Gunderson, Farrar, Carrell & Aldrich,** Rapid City, for Lampert Lumber Company d/b/a Canyon Lumber Company, Defendant and Appellant.

**Morrill & Morrill,** Sturgis, for Walton Sheet Metal, a partnership, Defendant and Appellant.

**Bangs, McCullen, Butler & Foye,** Rapid City, for Herbert F. Maloney, Maryan Maloney and the First Federal Savings and Loan Association, Defendants and Respondents.

RENTTO, J. This is another of those cases in which the rights of a mechanics' lien claimant collide with the assertion that the premises are exempt from such encumbrance under our homestead laws.

On or about September 16, 1956, the Maloneys, who were then living in rented premises and did not own a residence, made a written agreement to purchase from Marcoe a house to be built on the lots involved, then owned by him, subject only to their ability to obtain the necessary financ-

608

ing. Three days later Mr. Maloney and the First Federal Savings and Loan Association applied to the Veterans' Administration to guarantee a loan which the Association was proposing to make for that purpose. Applicable regulations of the V.A. required that the property on which it guarantees loans must be used as the veteran's home. On September 29, 1956, in connection with his application, Maloney certified that the proceeds of such loan would be used to construct a home for him and that he intended to occupy it as such, and that he would move into the property on its completion and use it as his home.

■ The application for the guarantee was approved on October 15, 1956 and the proposed loan made. During construction of the house the Maloneys on November 12, 1956 went to the building site and took possession of it by applying waterproofing material to the concrete basement. They moved into it on February 2, 1957 and apparently have lived in it from that date on. It was conveyed to them from the Marcoes by a deed executed on November 13, 1956 and recorded the following day. On this evidence the court found that on September 16, 1956 and at all times subsequent thereto, the Maloneys intended in good faith that the property in controversy should be their home and homestead. This finding, we think, has ample factual support.

Between November 16, 1956 and March 29, 1957 the Lampert Lumber Company sold and delivered to Marcoe certain building materials used in the construction of the house. It claims a lien for these items. Walton Sheet Metal, under an agreement with Marcoe, furnished certain material and labor for the construction of portions of the house between December 16, 1956 and March 12, 1957. Its claim of a lien is based on these items. The lien claimed by the plaintiff Brodsky was settled so the only liens here involved are those of Lampert Lumber Company, Walton Sheet Metal and the lien claimed by First Federal under the real estate mortgage given to it by the Maloneys on November 10, 1956 and recorded four days later.

In the trial court, and here, Lampert and Walton urged that even though the mortgage was on record before they furnished any material or labor, their liens were superior because the mortgage was made susequent to October 25, 1956, the date of the actual and visible beginning of the improvement. This proposition the trial court did not reach since it agreed with the contention of First Federal that both liens were of no effect because the property was homestead in character. Based on this ground it entered judgment dismissing the counterclaims of Lampert Lumber and Walton seeking foreclosure of their liens. From this judgment both lien claimants appeal.

■ ■ This court has consistently taken the view that a property may be impressed with the homestead character before the residence is completed and actually occupied by the family of the owner. Kingman v. O'Callaghan, 4 S.D. 628, 57 N.W. 912; Jensen v. Griffin, 32 S.D. 613, 144 N.W. 119, 50 L.R.A.,N.S., 1128; Yellow-Hair v. Pratt, 41 S.D. 190, 169 N.W. 515; Harter v. Davison, 53 S.D. 399. 220 N. W. 862; Sidle v. Cheney, 74 S.D. 540, 56 N.W.2d 86. In the Kingman case it said [4 S.D. 628, 57 N.W. 915]:

> "* * * when the head of a family, owning no other residence, purchases the site of an intended home, and begins the erection of a dwelling house thereon, with the intent by so doing to establish a place of abode for himself and family, which intention is followed by such occupancy as soon thereafter as the house, under the circumstances, can be completed, * * * the requirements of our statute have been answered, and the property is impressed with the homestead character before such house is completed and actually occupied by the family of the owner."

Under these holdings it becomes a homestead at the time of the intention on the part of the owner to occupy it as his home. This is obviously the rule the trial judge had in mind when he concluded this property was the homestead of the Maloneys from and after September 16, 1956.

At this juncture the claimants direct our attention to SDC 51.1713. This is a new section concerning homesteads which came into our law on the adoption of our 1939 Code. It provides that:

> "If the property is not marked off, platted, and recorded as hereinbefore provided it shall not have the character or exemption rights of a homestead unless it is actually occupied as such by the owner."

In dealing with the statute in Knittel v. G. Sommers & Co., 72 S.D. 5, 28 N.W.2d 878, 879, it was said that this section "has reference to the acquisition and establishment of a homestead". The Maloneys did not mark off or plat the property in question as provided. Consequently the claimants argue that in view of this statute it could not be their homestead until they actually occupied it. On behalf of the Maloneys it is urged that this statute is unconstitutional because it goes beyond what the legislature may properly do in this field.

This statute was discussed in Ramsey v. Lake County, 70 S.D. 61, 14 N.W.2d 125 and Knittel v. G. Sommers & Co., supra, but its validity was not an issue in either case. While Sidle v. Cheney, supra, was decided subsequent to the adoption of SDC 51.1713 and concerned property being a homestead before its actual occupancy, this question was not before the court because of the record on which the appeal was predicated. This is our first occasion to consider its constitutionality. Since the Maloneys owned no other residence property, and there is no claim that this property exceeds one acre in extent, we are not here concerned with the right of the lgislature to require the marking off, platting or recording of the property where the claimant owns several pieces of property which might be used as a home or where the property claimed exceeds the area allowed by law for a homestead.

In the constitution of this state, Art. XXI, Section 4, it is provided that :

"The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which to be fixed by general laws."

The power of the legislature to deal with homesteads does not flow from these provisions. Rather, they are limitations on what the legislature may do in this field. Acker v. Adamson, 67 S.D. 341, 293 N.W. 83. See also O'Leary v. Croghan, 42 S.D. 210, 173 N.W. 844, 6 A.L.R. 1134 and Home Lumber Co. v. Heckel, 67 S.D. 429, 293 N.W. 549. Significant in this section are the requirements that there must be a homestead exemption to all heads of families and that the right of every debtor to have his homestead exempt from forced sale must be recognized by laws that are wholesome.

█ In approching this problem it is well to look again at some fundamental pronouncements of this court. In Ramsey v. Lake County, supra, [70 S.D. 61, 14 N.W.2d 126] this court said:

"It seems clear that the purpose of creating a homestead is to provide for the family a home in which it may have shelter from and a protection against the claims of creditors or its own improvidence and where it may live and be protected."

In re Schneider's Estate, 72 S.D. 174, 31 N.W.2d 261, 264, it further said that:

"Throughout the entire history of this court no inroads upon the homestead exemption have been recognized except such as were clearly in accord with the constitutional mandate, * * *."

It is against this background that we must examine the statute in controversy.

In SDC 51.1713 the legislature has said that if the property claimed as a homestead is not actually occupied

by the owner as such it is not a homestead unless it is marked off, platted and recorded. In other words, the homestead character is established by (1) actual occupancy or (2) selection. For the purpose of this case we may assume, without deciding, that the legislature could require that actual occupancy was necessary to endow the property with the character of a homestead. Our concern here is limited to the other feature of the statute as to whether, under its limited power in this field, the legislature may say that without actual occupancy the property is not a homestead unless it is marked off, platted and recorded.

■ If effect is given to the challenged statute premises not actually occupied would be exempt to the families of those who select, mark off, plat and record a notice of homestead claim, but not to the families of those who neglect this precaution or are not aware of it. The protection of our constitutional provision would be denied to those most in need of it—the families of the uninformed and indifferent. It is palpable that this discrimination defeats the purpose of the founding fathers and results in a situation that is not wholesome. Accordingly, it is our view that this feature of the statute violates the mandate of the constitution.

However, since the statute is in two parts the doctrine of separability makes it our duty to determine whether the legislature would have enacted the provision as to occupancy without the part which we have held to be violative of the constitution. In re Snyder's Estate, 74 S.D. 14, 48 N.W. 2d 238. If the occupancy provision stands alone the effect of the statute would be to deny the homestead exemption to those in the process of constructing homes until such time as the residence structure was sufficiently in being to be habitable. Or putting it another way, the enactment would protect against forced sales under mechanics' liens for debts incurred for improvements made to a home in being but not those arising out of its original construction. In view of this situation we are satisfied that the legislature would not have enacted the provision as to occupancy if it

had known that the portion of the statute by which it expected to give the same protection to homes not in being, was beyond its power to enact. It follows in our view that the statute is unconstitutional.

██ ██ SDC 39.0702 provides that "The lien shall not extend to nor affect any rights in any homestead so far as the same is exempt from levy and sale on execution." By virtue of this enactment a mechanics' lien may attach to a homestead to the extent that the value of the homestead exceeds the amount of the exemption. Union Central Life Ins. Co. v. Co-operative Lumber Co., 51 S.D. 197, 212 N.W. 876. See also Keim v. Rand, 37 S.D. 408, 158 N.W. 904. If its value does not exceed the amount of the exemption no lien is created or acquired by the furnishing of materials or labor in the improvement of the property. Botsford Lumber Co. v. Clouse, 62 S.D. 108, 251 N.W. 801.

Our statute concerning the foreclosure of mechanics' liens, SDC 39.0720, provides in part:

> 'The judgment shall direct a sale of the real estate or other property for the satisfaction of all liens charged thereon, and the manner of such sale, subject to the rights of all persons which are paramount to such liens or any of them. It shall require the officer making such sale to pay over and distribute the proceeds of the sale, after deducting all lawful charges and expenses, to and among the lienors to the amount of their respective claims, if there is sufficient therefor; and if there is not sufficient then to divide and distribute the same among the several lienors in proportion to the amount due to each, and without priority among themselves."

As stated above, when the property involved is a home-stead, there can be no lien unless and until it appears that the value of the property exceeds the exemption allowance. Consequently, the existence of excess value is an issue that must be tendered and established in the foreclosure action

and found by the court before a judgment of foreclosure may be entered. This is the burden of the lien claimants.

■ The homestead character of the property was pleaded by the Maloneys and First Federal as a defense to the liens. However, the matter of excess value was not made an issue on the trial by either a pleading or by the evidence. Nor was any finding as to it requested or made. In this state of the record the trial court could not do otherwise than dismiss the foreclosure attempts of the lien claimants. There can be no enforcement of a lien by foreclosure unless there exists property against which it is a charge. It may well be that it was error in this dismissal to characterize the lien claims as null and void, but if error, it was not prejudicial.

■ In their brief in this court claimants for the first time urged the matter of an excess of value. They claim that this fact is established by Maloney's Exhibit No. 8, his original purchase agreement with Marcoe, which states the selling price of the house to be $12,000, and by the mortgage given by the Maloneys to First Federal, which is in the face amount of $10,500. Since this issue was not before the trial court it is not before us on this appeal. Schoenrock v. City of Sisseton, S.D., 103 N.W.2d 649. Accordingly, we must hold that the trial court did not err in dismissing the counterclaims of the lien claimants.

Affirmed.

ROBERTS, P. J., HANSON, J., and SEACAT, Circuit Judge, concur.

BIEGELMEIER, J. dissents.

SEACAT, Circuit Judge, sitting for SMITH, J.

BIEGELMEIER, Judge (dissenting).

If this property was the homestead at the time the first mechanics' lien claim came into existence the mechanics' claims are not liens. Our opinions allowing the homestead exemptions were mainly based on an ownership of the property by deed. An exception was Smith v. Allmendinger, 41

S.D. 144, 169 N.W. 512, where the claimant had a contract for deed, occupied the property since October 1915 and received his deed in July 1916; the materials were furnished in May 1916. There intent, actual occupancy and a valid contract for deed were present. In The Home Lumber Co. v. Heckel, 67 S.D. 429, 293 N.W. 549, the intention was communicated to the lien claimant before materials were furnished and in Sidle v. Cheney, 74 S.D. 540, 56 N.W.2d 86, the opinion was based on the theory the property had a homestead character when materials were first delivered.

However, we have held a homestead claim is subject to and inferior to a vendor's lien. Hickman v. Long, 34 S.D. 639, 150 N.W. 298. It was stated in the Home Lumber opinion more accurately "the vendor's lien attaches prior to the acquisition of the homestead interest." [67 S.D. 429, 293 N.W. 550]. The facts here, substantially as set out in respondents' brief, exhibit and findings are:

1. June 1955 _____ Waltons make agreement with Marcoe that they would make furnace bids on Marcoe-built homes and put in all gutter work on accepted jobs for 60¢ a foot

2. August 31, 1956____ Walton bid on job in suit, accepted by Marcoe and later completed work

3. Sept. 12 _____ Marcoe as "contractor" agrees "to build and deliver a home as represented in plans and specifications" to Maloneys on a Purchase Agreement form that gives a street address as the "Location" and "New House Address" of the property involved; the legal description omits the block and there is no agreement to sell or convey any land, or other usual provisions of a contract for sale of real estate (The trial court found this date as Sept. 16; Exhibit 8 shows it to be Sept. 12)

4. Sept. 19 _____ Maloneys execute a Veterans' Administration Application for Home Loan Guaranty for $10,500 to construct a home, proceeds to be paid out during construction, stating he intends to occupy the property

4a. Sept. 29 _____ Maloney executes certificate of intention to occupy property described by street address only

5. Oct. 23 _____ V. A. issues Certificate of commitment for 60%

5a. Oct. 25_____ Visible improvement of premises appears

6. Nov. 5 _____ Maloneys pay Marcoe $300

6a. Nov. (early in)_____ Marcoe talks to Lampert about lumber for this job

7. Nov. 10 _____ Maloneys execute mortgage to First Federal

8. Nov. 12 _____ Maloneys apply waterproofing to basement wall

9. Nov. 13 _____ Marcoe executed deed to Maloneys

10. Nov. 14 _____ Deed and mortgage recorded

11. Nov. 16__. _____ Lampert first material furnished

13. Dec. 15, 1956_____ Walton first material furnished

14. Feb. 2, 1957_____ Maloneys move into house.

Neither Lampert nor Walton had any knowledge or notice of the First Federal mortgage or the transactions between Marcoe, Maloney, First Federal or the Veterans' Administration listed above.

In my opinion all liens became effective as of October 25, 1956. Botsford Lumber Co. v. Schriver, 49 S.D. 68, 206 N.W. 423. Marcoe then had fee title of record and had incurred or authorized the debts before that date. Maloneys had no contract for deed; it was a building contract on its face, stating "Selling Price of house (as) $12,000.00" the full purchase price. In Exhibit No. 8 Maloneys agreed "to not occupy or otherwise interfere with the completion of the house, until after Federal Housing Administration, or other loan inspectors have approved the house as complete, and full payment is authorized." It does not appear this was ever done, nor has the loan been guaranteed by the V.A. To permit their secret intention to occupy the property, without having possession or occupancy or any right to possession or occupancy, is using the homestead exemption as a fraud on innocent persons. Anyone furnishing materials or labor is entitled to some notice of a possible homestead claim. Judge Whiting so indicates in the first Jensen v. Griffin case, 32 S.D. 613 at page 620 and 621, 144 N.W. 119 at page 122, quoted with approval in Sidle v. Cheney, supra: "Certainly no construction should be placed upon our homestead law that will permit it to be used as an instrument through which a palpable fraud may be committed against a party relying upon conditions as they exist when they contract with the homestead claimant" or as here with the apparent owner and builder, Marcoe. This quotation from Judge Whiting is from a case where the homestead claimant actually occupied one house of two on one tract of land which was some notice of his rights. The September 12, 1956 Exhibit 8 was a building contract; even if it was more and gave Maloney any right, it simultaneously authorized liens and these should have priority the same as a vendor's lien; there is no question Marcoe retained one. Hickman v. Long, supra. Maloney's title did not arise until his deed November 13— the liens were effective before that date and should be granted priority over the homestead claim and mortgage.

As to the mortgagee, it paid out only $69.85 to materialmen; $3,500 went to Marcoe, the rest was disbursed to itself or retained for an old debt. U.S. laws do not apply to the lien

holders; they affect relations between the U.S. and the mortgagee. The loan is not yet guaranteed and the mortgagee is in the private loan business the same as anyone e l s e. Brettschneider v. Wellman, 230 Minn. 225, 41 N.W.2d 255, involved a V.A. loan and similar facts. It should be persuasive as we adopted our law from that state. Botsford Lumber Co. v. Schriver, supra. Also, there is more basis for estoppel to assert the homestead right here than in Crawford v. Carter, 74 S.D. 316, 52 N.W.2d 302. It was suggested in Kingman v. O'Callaghan, 4 S.D. 628 at page 636, 57 N.W. 912 at page 914. Neither Maloney nor the mortgagee should stand idly by and permit a building to be built on a lot without making any inquiry as to possible liens.

The result reached here should be a warning to any person who furnishes labor or material for the erection of a building or any improvement to property. The builder or some person unknown or with an unrecorded instrument may claim it as a homestead based on his undisclosed intent and thus deprive the builder of any lien or claim on the property he has improved. With this I cannot agree and therefore dissent.