BIG SIOUX LUMBER CO., Respondent, v. MILLER, et al, Appellants.

(234 N. W. 31.)

(File No. 6912.   Opinion filed December 30, 1930.)

*Lyon, Bradford & Grigsby*, of Sioux Falls, for Appellant.
*Bogue & Bogue*, of Parker, for Respondents.

CAMPBELL, J. In 1914, one Welch was the owner of a certain quarter section of land in Turner county, S. D., and entered into a contract to sell the same to one Kalayjian, by the terms of which contract Welch was to retain security title until the completion of payments by Kalayjian. In May, 1924, the vendor Welch transferred said realty by warranty deed to Exchange Bank of Lennox subject to the Kalayjian contract. Kalayjian having failed to make and complete the payments required of him under said contract, the Exchange Bank of Lennox instituted an action for the foreclosure of the contract, which resulted in a decree of court in April, 1926, whereby all rights of Kalayjian to the realty in question, by virtue of his purchase contract, were foreclosed and canceled. Thereafter Exchange Bank of Lennox deeded the realty in question to the Lennox Holding Company, defendant and appellant herein.

Kalayjian's contract for the purchase of the realty provided, among other things, that Kalayjian should "put in $3,000.00 worth of farm improvements in the way of barn, house, hog-house, fencing, etc., within three years, beginning from the first day of March, 1918."

Late in 1920 and early in 1921 Kalayjian commenced to place upon the farm the improvements required of him by his purchase contract. At that time the only thing on the quarter section was

what Kalayjian describes as "an old school house, a tumbled down school house." Kalayjian remodeled and repaired the old schoolhouse, constructed a new barn, moved an old house onto the premises, and repaired and remodeled it, built a hog house, moved on another old building, and remodeled and rebuilt it into a chicken house, put on fencing, installed a well, pump, etc., and had a tenant living on the land for the first time in the spring of 1921. A considerable amount of the work and labor upon these improvements was performed by defendant and respondent Miller, a contractor and builder, and the materials were purchased from Big Sioux Lumber Company, plaintiff and respondent, and from Schoeneman Bros. Company, defendant. Inasmuch as the court below determined that Schoeneman Bros. Company had no rights against defendant and appellant, from which determination no appeal has been taken, transactions with Schoeneman Bros. Company need not be further considered or discussed in this case.

With reference to the transactions between Kalayjian and Miller, and Big Sioux Lumber Company, the facts may be fairly summarized as follows:

Kalayjian in the winter of 1920-21 entered into a contract with Miller whereby Miller agreed to move onto the premises the old house which Kalayjian desired to have placed upon his premises and repaired and remodeled for the sum of $375. Miller also agreed to perform, for the sum of $225, all work and labor for the building of the new barn which was to be erected. He further agreed to do all carpenter work which was necessary in the remodeling and repairing of the old house after it had been moved upon the premises, and in the remodeling and repairing of other outbuildings at the rate of 60 cents per hour.

The barn being an entirely new structure, Miller estimated in detail the lumber that would be required for its construction, and this itemized and detailed list of lumber necessary for the construction of the barn was submitted by Kalayjian to Big Sioux Lumber Company, and a written agreement was made, whereby the Big Sioux Lumber Company agreed to furnish the lumber for the barn at specified prices for the different items and sizes, the aggregate amount of the estimated lumber bill for the barn being $610. Kalayjian at that time informed the Big Sioux Lumber Company that, in addition to constructing the new barn on the

premises, he was about to repair and remodel some old buildings, being the old schoolhouse on the premises and other old buildings which he was moving onto the premises, and a tentative estimate of the lumber necessary for such repairing and remodeling was made amounting to $240.12, but it was also stated that it was exceedingly difficult to estimate in advance the exact amount or dimensions of lumber that might be required for repairing or remodeling, and that all of the items in the tentative estimate might not be needed, and that other items outside the tentative estimate might be required, and it was orally agreed that Kalayjian, regardless of the tentative estimate of $240.12, should take from the Big Sioux Lumber Company what lumber he might need for the repairing and remodeling, and that the same would be furnished and charged to him at the same prices definitely and specifically agreed upon for various kinds and dimensions of lumber in the estimate previously made for the requirements for the new barn.

Pursuant to these contracts and agreements, work was performed by Miller and lumber furnished by Big Sioux Lumber Company in the late fall and winter of 1920 and spring and early summer of 1921. Miller moved the old house onto the Kalayjian farm in December, 1920, at the agreed price of $375. He built the barn in February and March of 1921, charging the agreed price of $225. In June, 1921, he worked four hours placing some posts under the house and removing some jacks, which he charged as extra work in the amount of $2.40, making his total charges up to and including June, 1921, $602.40. From December, 1920, to June, 1921, Big Sioux Lumber Company delivered the lumber required for the new barn at the estimated price of $610, excepting only one item in the barn estimate consisting of twenty-five pieces of 1x4 sixteen feet long of the value of $12.63, which were never used in the barn, were never delivered for that purpose, and will be hereinafter referred to. In addition to the material for the new barn, Big Sioux Lumber Company, between December, 1920, and June, 1921, delivered other lumber and materials for use on the premises to the amount of $286.33, including items aggregating $54.05 for fencing and fence posts. In June, 1921, the total charges of Big Sioux Lumber Company to Kalayjian amounted, therefore, to $896.33, according to their books, with no credits excepting one of $12.50 for the return of some empty cement sacks. The only trans-

action on this account during the year 1922 was cash credit for $52.63 for a payment made by Kalayjian on December 16, 1922. As previously stated, the total charges on the Miller account up to and including June, 1921, amounted to $602.40, upon which there was credited a cash payment in December, 1920, of $100, a cash payment in March, 1921, of $100, a cash payment in May, 1921, of $50, leaving the balance due in June, 1921, $352.40. The only transaction upon that account during the remainder of the year 1921 was a further cash payment of $25, reducing the account to $327.40. The only transactions with Miller in 1922 were that a further payment of $10 was made on January 25, 1922, reducing the amount to $317.40, and on May 25, 1922, there is a charge of $6 for replacing some shingles on the house which had been blown off by a storm, which item of $6 was paid for in cash on the same day, leaving the account still $317.40.

No transactions with reference to either account occurred in 1923 until July. In July, 1923, Miller worked fourteen hours shingling a porch roof and building up the porch, and at that date and for that use the Big Sioux Lumber Company furnished one piece of 2x4 and some ship-lap of the total value of $11.06, and on September 10, 1923, Kalayjian paid the Big Sioux Lumber Company $15.56. On October 15, 1923, the Big Sioux Lumber Company furnished one piece of 1x6 sixteen feet long, five hundred shingles, two pieces of 2x6 sixteen feet long, all of the value of $6.24, and charged to Kalayjian at that price, and also five pieces of 1x4 sixteen feet long of the value of $2.47. It will be remembered that the estimate of new material for the barn charged to Kalayjian at $610 in March, 1921, two and one-half years previously, contained as one of the charge items twenty-five pieces of 1x4 sixteen feet long at the aggregate price of $12.63. When the five pieces of 1x4 were delivered in October, 1923, no charge was made therefor upon the Kalayjian bill, but instead he was given credit for $10.16, with the explanation that this credit represented twenty pieces of 1x4 not taken on the lumber bill for the barn furnished two and one-half years earlier. This lumber of the value of $6.24 furnished by the Big Sioux Lumber Company on October 15, 1923, was taken to the Kalayjian farm by Miller. The two pieces of 2x6 were spiked up in the barn (erected two and one-half years previously and in use since erection) as braces to strengthen

the walls of the haymow.  The remainder of the lumber was used to extend and shingle the eaves and inclose the sides of a small back porch, which previously and for more than two and one-half years had been simply an open back porch consisting of roof and floor with the sides uninclosed.  Miller's charge in October, 1923, was $3 for five hours labor and 75 cents for trucking the lumber items out to the farm.  On October 27, 1923, Big Sioux Lumber Company filed with the clerk of courts of Turner county, S. D., a mechanic's lien statement for $822.79, being the entire amount due it from Kalayjian going back to the first item furnished in October, 1920, and on November 6, 1923, Miller likewise filed a mechanic's lien statement with the clerk of courts of Turner county, S. D., for the entire balance due him from Kalayjian in the amount of $329.55, going back to and including the charge of $375 for moving the old house in December, 1920.

Thereafter and in 1927 Big Sioux Lumber Company, as plaintiff, instituted this action to foreclose its mechanic's lien, naming as defendants the Lennox Holding Company, which had then become the holder of the fee title to the premises in question, as hereinbefore set out, and Miller, and Schoeneman Bros. Lumber Company, a corporation, as additional lien claimants.

Defendant Lennox Holding Company answered admitting its title to the premises, but denying plaintiff's claim of lien, and defendants Miller and Schoeneman Bros. Company, a corporation, answered separately setting up their respective lien claims.  The matter was tried to the court without a jury, and the learned trial judge found, in substance, that defendant Schoeneman Bros. Company had no lien, but that the materials furnished by plaintiff Big Sioux Lumber Company in October, 1923, were part of the contract between Kalayjian and Big Sioux Lumber Company made in the fall of 1920, and that the labor performed by Miller in 1923 was part of the contract between Miller and Kalayjian in the fall of 1920, and the court entered judgment awarding plaintiff, Big Sioux Lumber Company, a lien for the full amount of its claim against Kalayjian with interest thereon (excepting an item of $54.05 for fencing, which the court held was not properly to be included in the lien) and an attorney's fee in the amount of $250, making the total amount of plaintiff's lien $1,380.22, and awarded a lien to the defendant Miller for the full amount of his claim

and interest (excepting an unpaid balance of $90 on the house moving contract of December, 1920, which the court held could not be included in the lien) making the lien of defendant Miller amount in all to the sum of $339.49. From this judgment and from an order denying its motion for new trial, defendant Lennox Holding Company has appealed.

The rights of appellant Lennox Holding Company to the premises in question are derived through Welch, the original vendor to Kalayjian, and it is apparent under the circumstances here disclosed that the rights of appellant are identical with the rights which Welch would have enjoyed, had Welch himself retained title to the premises and regained full and complete title thereto in 1926 by foreclosing the Kalayjian contract.

Section 1647, Rev. Code 1919, provides in part as follows: "Whenever land is sold under an executory contract requiring the vendee to improve the same, and such contract is forfeited or surrendered after liens have attached by reason of such improvements, the title of the vendor shall be subject thereto."

It is plain upon the record in this case that the repairs and improvements made by Kalayjian upon the premises in question in the fall of 1920 and the spring of 1921 were made pursuant to the provision of the Welch-Kalayjian contract, requiring the vendee to "put $3,000.00 worth of farm improvement in the way of barn, house, hog house, fencing, etc., within three years, beginning from the first day of March, 1918." Under the statutory provision above quoted a lien would arise for labor or material furnished for such improvements, good as against the vendor of the land and his successors in interest. Under section 1649, Rev. Code 1919, however, a mechanic's lien ceases at the end of ninety days after doing the last of the work or furnishing the last item of material, unless within said ninety days a statement of claim of lien is filed with the clerk of courts. In this case no lien statement was filed until the fall of 1923 and any lien for labor performed or material furnished in the fall of 1920 and spring of 1921 has been lost, unless the performance of such labor and furnishing of such material can be "tacked" to the $3 worth of labor performed and the $6.24 worth of material furnished in October, 1923, two and one-half years later. In order to permit "tacking" the labor performed and materials furnished must be parts of one

reasonably continuous and connected transaction. See Botsford Lumber Co. v. Schriver, 49 S. D. 68, 206 N. W. 423; Larson v. Anderson, 53 S. D. 236, 220 N. W. 498.

In the instant case the findings of the learned trial judge that the performance of labor and furnishing of material in October, 1923, constituted a part of, and the completion of, the agreements entered into between Kalayjian and Big Sioux Lumber Company and Miller, respectively, in the fall of 1920 and spring of 1921 are, we think, without support in the evidence and against the clear preponderance of the evidence. It seems to us quite plain from the record in this case that the improvements which Kalayjian was required to install and construct upon the premises pursuant to his contract with Welch "within three years, beginning from the first day of March 1918," were substantially completed in June, 1921. Tenants occupied the premises and the buildings thereon from the spring of 1921 forward. The materials furnished and labor performed in October, 1923, were entirely subsequent, separate, and disconnected items. To say that the installing of two braces in the haymow of a barn in October, 1923, not contemplated or specified when the barn was built, was so connected with the construction of the barn in March, 1921, as to permit "tacking" and the filing of a lien for the labor and materials involved in the original construction is unjustifiable. And to say that extending and shingling the eaves and inclosing the sides of a previously uninclosed back porch on a house in October, 1923, is so connected with the original moving, remodeling, and repairing of the structure in the spring of 1921 as to permit "tacking" and the creation of a lien for the labor and materials for the original moving, repairing, and remodeling is equally unjustifiable.

So far as concerns the items of material furnished and labor performed in October, 1923, there could in no event be a lien superior to the rights of appellant. Those items are entirely separate and disconnected from the improvements made by Kalayjian pursuant to his contract with Welch in the fall of 1920 and spring of 1921. As to those items the case is governed by that portion of section 1647, Rev. Code 1919, reading as follows: "When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior incumbrancers or lienors shall be deemed to have authorized such

improvements, insofar as to subject their interests to the liens therefor." As to those items, since they constitute no part of the improvements contemplated by the Welch Kalayjian contract, but are entirely separate, subsequent, and disconnected, the situation stands just as it would have stood had there been no provision for the making of improvements in the Welch-Kalayjian contract. Welch retaining legal title for security is a bona fide prior incumbrancer, and, as such, his rights are superior to any lien claims. See Wagner v. Wagner, 47 S. D. 104, 196 N. W. 499.

Appellant Lennox Holding Company has succeeded to this priority of Welch as to any liens, except such as might arise from improvements contemplated by and made pursuant to the Welch-Kalayjian contract.

It therefore follows that the learned trial judge erred in awarding any lien against appellant, either in favor of Big Sioux Lumber Company, or in favor of Miller.

The judgment and order appealed from are reversed, and the cause remanded, with directions to enter a judgment in favor of appellant Lennox Holding Company, and against plaintiff and respondent Big Sioux Lumber Company and defendant and respondent R. A. Miller, canceling in all respects, and their entirety, the liens claimed by said Big Sioux Lumber Company and R. A. Miller, respectively, against the property of appellant herein involved, and awarding appellant its costs against each of said lien claimants, including an attorney fee in the amount of $25 pursuant to section 1651 and section 2605, Rev. Code 1919.

BROWN, P. J., and POLLEY, SHERWOOD, and BURCH. JJ., concur.