Merle D. WEFEL, d/b/a Diversified Acoustics Drywall, Plaintiff,

v.

HAROLD J. WESTIN AND ASSOCIATES, INC., H.J. Westin and Associates, P.A., Harold J. Westin Constructors, Inc., a corporation, Rouse Mechanical, Inc., a corporation, Hunt Electric Corp., Inc., a corporation, Defendants,

and

City of Rapid City and Medical and Dental Building, a partnership, Defendants and Appellees,

and

Howard-Osmera & Associates, Inc., Defendant and Appellant.

No. 13518.

Supreme Court of South Dakota.

Argued April 27, 1982.

Decided Jan. 26, 1983.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant Howard-Osmera & Associates, Inc.; Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on brief.

Curtis S. Jensen of Gunderson, Farrar, Aldrich, Warder & De Mersseman, Rapid City, for defendants and respondents Medical and Dental Bldg. and City of Rapid City.

MORGAN, Justice.

This appeal arises from the foreclosure of a mechanic's lien filed by appellant Howard-Osmera & Associates, Inc. (Engineer), on property owned by the City of Rapid City (City) and leased to Medical and Dental Building, a partnership (Building Partnership). The trial court granted a directed verdict for appellees, City and Building Partnership. Engineer appeals and we reverse and remand.

On December 23, 1976, Building Partnership, upon leasing the subject property from City, contracted with Harold J. Westin Constructors, Inc. (Construction Manager) to construct a medical and dental clinic in Rapid City, South Dakota.[1] On that same day, the architect for the construction, Harold J. Westin and Associates, Inc. (Architect), contracted with Engineer for mechanical and electrical design of the building. The contract called for two payments; 80% due upon completion of the construction documents and the remaining 20% upon completion of construction. The contract further provided that any additional work would be paid at fixed hourly rates.

Construction on the project began in the spring of 1977 and continued in stages as additional doctors decided to move into the building. In July 1977 Engineer submitted its invoice for the first 80% of its fixed fee. As late as March 1978 Engineer was designing new areas within the building for additional medical personnel. On October 19, 1978, Lawrence Howard and Al Osmera, the principals of Engineer, conducted an on-site inspection of the mechanical and electrical portions of the construction project and compiled a punch list of work to be completed. Subsequently, on October 24, 1978, Engineer submitted an invoice to Construction Manager for "final inspection" and an invoice to Architect for the remaining "20% due upon completion of the project." On October 31, 1979, Architect issued to Construction Manager a certificate of completion stating that the work "involved in the project is now 100% complete ... except for those items mentioned in the attached punch lists." Engineer did not receive a copy of the certificate of completion.

One of the items on the electrical punch list stated: "Connect up Humidifiers Priority # 1." Although the humidifiers were in place, they were not electrically connected until approximately November 1, 1978. When the humidification system began operating, problems developed with condensation in the duct work resulting in water leakage. In August 1979 Rouse Mechanical, Inc., a subcontractor on the project, consulted with Engineer concerning the humidification system and the project. On October 4, 1979, Construction Manager consulted with Engineer concerning the problems with the humidification system. One month later, Construction Manager filed a petition for bankruptcy. Engineer filed a mechanic's lien on December 17, 1979, in the amount of $20,934, with interest. At the trial for foreclosure of the mechanic's lien, the court granted Building Partnership's motion for a directed verdict.[2] Engineer appeals, alleging that lienable work was done within 120 days of filing the mechanic's lien.

██ Although the court granted a motion for a directed verdict, SDCL 15–6–

---

1. The arrangement between Building Partnership and City was typical of the lease-sale transaction in conformity with SDCL ch. 9–54, Economic Development Projects.

2. According to SDCL 15–6–41(b) this was a motion for dismissal, rather than a motion for a directed verdict. *See* discussion *infra.*

41(b) [3] states that this is a motion for dismissal. Federal Rule of Civil Procedure 41(b) was amended in 1963 to provide that "the motion for dismissal at the close of the plaintiff's evidence shall apply only to non-jury cases .... Hereafter the correct motion in jury-tried cases will be the motion for a directed verdict." 5 Moore's Federal Practice § 41.13 at 41–176. Since the instant case was tried to a court without a jury, the actual motion granted by the court was a motion for dismissal.

■ When a court dismisses an action, the court must make findings of fact and conclusions of law pursuant to SDCL 15–6–52(a). The court's dismissal of the action operates as an adjudication upon the merits. SDCL 15–6–41(b). Since the dismissal operates as an adjudication upon the merits, on appeal this court reviews the findings of fact under the "clearly erroneous" standard. 5 Moore's Federal Practice § 41.13[4] at 41–196 to 198. The conclusions of law are reviewed under the usual "in error as a matter of law."

■ Initially, we must determine whether Engineer's services are the type of services within the contemplation of our mechanic's lien statutes. SDCL 44–9–1 specifically provides:

> Whoever shall, *at the request of the owner or the duly authorized agent or representative of the owner,* or of any contractor or subcontractor, *furnish skill, labor, services,* including light, power, or water, equipment, or materials for the improvement, development, or operation of property as hereinafter specified, shall have a first lien thereon and the appurtenances thereto, ... for the price or value

of the same, so furnished, subject to the further provisions of this chapter, as follows:

> (1) For the erection, alteration, repair, or removal of any building, fixture, bridge, fence, or other structure ....

(Emphasis added.) The mechanic's lien filed by Engineer is for skills and services performed by Engineer. Further, the record indicates that the services performed by Engineer were requested by contractors or subcontractors. Clearly, these services are within the scope of the mechanic's lien statutes and are "lienable work."

■ The remaining issue is whether the Engineer timely filed the mechanic's lien. SDCL 44–9–15 states that:

> The lien shall cease at the end of one hundred twenty days after doing the last of such work, or furnishing the last item of such skill, services, material, or machinery, unless within such period a statement of the claim therefor be filed with the register of deeds of the county in which the improved premises are situated, or of the county to which such county is attached for judicial purposes, or if the claim be under the provisions of subdivision (2) of § 44–9–1, with the secretary of state.

Accordingly, for the mechanic's lien to include all of the services provided by Engineer on the contract, the work done in October 1979 would have to be part of the Engineer's continuing obligation under the contract.

Several times this court has addressed whether supplies or services were part of a

---

**3.** SDCL 15–6–41(b) provides:

For failure of the plaintiff to prosecute or to comply with this chapter or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in § 15–6–52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in § 15–6–41, other than a dismissal for lack of jurisdiction, or for failure to join a party under § 15–6–19, operates as an adjudication upon the merits.

continuing obligation under a contract.[4] In several of these cases, we have held that the 120-day period cannot be extended by a return to the worksite. In *Thorson v. Pfeifer,* 82 S.D. 313, 145 N.W.2d 438 (1966), where a heating subcontractor returned voluntarily over three months after installation to inspect and winterize the unit, this court held that the 120-day filing period ran from installation and not the voluntary service call. Similarly, in *Big Sioux Lumber Co. v. Miller,* 57 S.D. 506, 234 N.W. 31 (1930), a contractor returned over two years after construction of a building to strengthen it. There, this court refused to permit the contractor's statement filed within ninety days of that visit to relate back to the original construction contract. Also, in *F.H. Peavey & Company v. Whitman,* 82 S.D. 367, 146 N.W.2d 365 (1966), where a materialman furnished adhesive to glue loose shingles blown up by high winds, this court held that the subsequently filed mechanic's lien did not attach to materials furnished a year earlier under a contract to build plaintiff's house. Most recently, in *McLaughlin Elec. Supply v. Am. Empire Ins.,* 269 N.W.2d 766 (S.D.1978), we refused, for purposes of the 120-day period, to allow a contractor to count the period from a return to worksite to determine whether the work was completed and whether the workmen picked up their tools.

The instant case, however, presents us with a unique set of circumstances. Here, the construction was completed in stages of areas of the building; as new medical personnel decided to move into the building, Engineer would design an additional suite. Engineer was providing these additional designing services as recently as March 1978. Further, the item to which the mechanic's lien related was a consultation regarding the humidification system. Since a humidification system is not used until the winter season and this system was not turned on until the winter of 1978–79, the Construc-

tion Manager, Engineer and subcontractor worked throughout the summer and fall of 1979 to correct the problem. The time sequence of construction and the seasonal nature of the humidification system distinguish this case from previous cases resolving the timely filing of a mechanic's lien.

The present mechanic's lien attaches to the consultations in the fall of 1979 since the lien was filed within 120 days thereafter. To resolve whether Engineer's mechanic's lien attaches to the work previously completed, we must examine the Engineer/Architect contract to identify whether the work fell within the purview of that contract.

Engineer's responsibilities under the contract with Architect were divided into three phases; the design and development phase, construction document phase, and the construction phase. Since the construction phase was the final phase of the project, it is the pertinent portion of the contract in question. Regarding the end date of the construction phase, the contract provides:

> The construction phase for This Part of The Project ... will terminate when the Engineer certifies and the Architect agrees that the construction contract requirements for This Part of The Project have been completed.

Although Engineer submitted an invoice to Construction Manager for "final inspection," Engineer did not certify the completion of the project. Further, Architect did not agree that the work was finished when it issued the certificate of completion stating that the work "involved in the project is now 100% complete ... except for those items mentioned in the attached punch lists." By its own words, Architect intended the contract to continue until the punch lists were completed or, as the contract provided, until the Architect notified Engineer of completion.[5] The record shows that

4. *See,* Dugan, "Mechanic's Liens for Improvements on Real Property," 25 S.D.L.Rev. 238, 250 (1980).

5. In addition to the above provision for termination, the Contract provides, "This Agreement is terminated if and when the Prime Agreement is terminated. The Architect shall promptly notify the engineer of such termination."

Engineer did not receive the Architect's certificate of completion until the day of the trial.

One of the items on the punch list was to connect the humidifiers. Although the humidifiers were connected in November 1978, Engineer argues that the services it provided in August and October, 1979, were part of its continuing obligations under the Construction Phase of the contract. The contract provides:

The Engineer shall assist the Architect in determining whether the Architect shall reject Work for This Part of the Project which does not conform to the Contract Documents or whether special inspection or testing is required.

. . . .

The Engineer shall assist the Architect in conducting inspections with respect to This Part of the Project to determine the Dates of Substantial Completion and final completion and in receiving and reviewing written guarantees and related documents assembled by the Contractor with respect to This Part of the Project.

In August and October of 1979, the Construction Manager and a subcontractor contacted Engineer regarding problems with the humidification system and items yet to be completed on the punch lists. Such services fit within these provisions requiring Engineer to assist Architect in conducting inspections and in determining whether it should reject work, or whether the system conforms to contract documents. Since Architect had not terminated the contract and these consultations of August 22 and 23, and October 4, 1979, were within the purview of the contract and the punch list, the mechanic's lien filed on December 17, 1979, attaches to all work completed under that contract.

In reviewing the dismissal of this action, we review the findings of fact by the trial court under the clearly erroneous standard. SDCL 15–6–41(b); SDCL 15–6–52(a). The trial court found that the subcontractor was repairing the humidification system when it contacted Engineer for consultation in August of 1979. The trial court also found that the Construction Manager also discussed these repairs when it consulted with Engineer in October of 1979. The trial court then concluded that these consultations as to repair were not items of work related to the original contract.

Under the contract before us, and the unique factual setting of this case, we disagree with the trial court's findings. The contract provides that "[t]he Engineer shall assist the Architect in determining whether the Architect shall reject work" for the project or whether special testing is required. Additionally, the contract provides that the contract will terminate when the Engineer certifies and the Architect agrees that the work was completed. Because the humidification system never worked correctly since it was installed and because Architect did not agree the work was completed, these consultations fit within the contract provisions. Further, considering the unique factual setting of this case, i.e., the time sequence of construction and the seasonal nature of the humidification system, we hold these findings of the trial court clearly erroneous. Accordingly, the dismissal of this action was inappropriate.

We reverse and remand for further proceedings.

WOLLMAN and DUNN, JJ., concur.

FOSHEIM, C.J., and HENDERSON, J., dissent.

HENDERSON, Justice (dissenting).

## THE LAW

We are not trail blazing through a legal wilderness in this case. For the law is well settled in this State that labor and services in the form of examination, repair or servicing of fixtures or attachments to a building after the original installation, *does not* extend the time for the filing of a mechanic's lien from the date of the furnishing of such additional services. (Emphasis supplied.) *McLaughlin Electric Supply v. American*

*Empire Insurance,* 269 N.W.2d 766 (S.D. 1978); *Potter v. Anderson,* 85 S.D. 142, 178 N.W.2d 743 (1970); *F.H. Peavey & Company v. Whitman,* 82 S.D. 367, 146 N.W.2d 365 (1966); *Thorson v. Pfeifer,* 82 S.D. 313, 145 N.W.2d 438 (1966). Furthermore, the highest Court of this State has steadfastly refused to permit the "tacking" of additional services after the completion of the original construction under varying facts. *Dirks v. Orchard & Wilhelm Co.,* 63 S.D. 99, 256 N.W. 723 (1934); *Big Sioux Lumber Co. v. Miller,* 57 S.D. 506, 234 N.W. 31 (1930); *Larson v. Anderson,* 53 S.D. 236, 220 N.W. 498 (1928); *Barry v. G.L. Wood Farm Mortgage Co.,* 50 S.D. 652, 211 N.W. 688 (1927); *Botsford Lumber Co. v. Schriver,* 49 S.D. 68, 206 N.W. 423 (1925).

### THE TIMETABLE

Original contract entered into on October 18, 1976.

... December 18, 1976, defendant, Westin, contracts to act as professional manager on project.

... December 23, 1976, the lien claimant, Howard-Osmera, contracts to provide engineering services.

... Spring of 1977, construction begins.

... July 1, 1977, lien claimant submits invoice for 80% of its fixed fee.

... July 1, 1977, through August 1, 1978, lien claimant submits series of invoices for services performed in addition to the fixed fee.

... October 19, 1978, electrical punch list states: "Connect up humidifiers priority number one." Dissenter's note: the humidifiers were in place at this time but were not then electrically connected.

... October 24, 1978, lien claimant submits invoice expressing "Final Inspection: October 19, 1978."

... October 24, 1978, lien claimant additionally submits invoice for the balance of its fixed fee stating "20% due on completion of project."

... October 31, 1978, architect issues a sworn Certificate of Completion.

... November 1, 1978, humidifiers are connected.

... August 22 and 23, 1979, on-site inspection by a nonlien claimant now attempting to repair the faulty humidifiers. This on-site inspection is seen on the mechanic's lien statement.

... October 4, 1979, lien claimant reflects on lien statement of a telephone conversation between lien claimant and one Peter Senty of Westin Contractors that humidification system does not function properly.

... December 17, 1979, lien claimant files lien well over one year past the final inspection. Said lien is one year after the last invoice for work. Said lien is one year after the sworn Certificate of Completion. Said lien is one year beyond the installation and connection of the humidification system on November 1, 1978.

Therefore, the mechanic's lien was not filed within 120 days after the completion of the last work or furnishing the last item of skill or services. The lien, therefore, absolutely terminates unless such filing is made within the prescribed time. Indeed, the mechanic's lien was filed nearly 14 months after the last work was performed on the project.

### CONCLUSION

Basically, the mechanic's lien statute is to protect the contractor or materialman who is diligent. Where the workmanship and material furnished are inferior or inadequate, and the workman must return because of this reason, the workman or materialman should not reap a benefit from his own faulty work or material. To extend the time to file a lien from the date that he performs repair work or installs decent material subsequent to the original installation, is to reward poor effort. Here, the lien claimant should not be allowed to benefit from any breakdown of the humidification system by using repair work to extend the time for filing a lien for its original services. This decision is contrary to the majority rule in the United States and the past decisions of the Supreme Court of this State. Thus, I would affirm the trial court's order directing a verdict in favor of appellees. This case is not distinguishable from past decisions of this Court.

I am authorized to state that Chief Justice FOSHEIM joins in this dissent.