In re Marshall S. SWANN, a/k/a Stuart Swann, a/k/a M. Stuart Swann, Debtor.

James A. CRAIG, Chapter 7 Trustee, Plaintiff,

v.

Marshall S. SWANN, Vicki J. Swann, Minnehaha County Treasurer, First Federal Savings Bank of South Dakota, First Interstate Bank of South Dakota, N.A., Marsos Property Maintenance, Campbell Supply Company, Lyle J. Anderson, Vern Waltjer Construction, Bill Mathers Plumbing, Inc., Don Rote, d/b/a Rote Electric, Adrian Sod, Inc., Landscape Garden Centers, Don's Custom Cabinetry, Inc., Mahlander's, Inc., Vrooman Floor Covering, Inc., the Mathison Company, Sears Contract Sales, Defendants.

Bankruptcy No. 91–40802–PKE.
Adv. No. 92–4006–PKE.

United States Bankruptcy Court, D. South Dakota, S.D.

June 15, 1992.

James A. Craig, Craig & Nichols, P.C., Sioux Falls, S.D., for plaintiff.

Kevin Dornberger, Sioux Falls, S.D., for defendants Marshall S. Swann and Vicki J. Swann.

Patrick T. Dougherty, Dougherty & Dougherty, Sioux Falls, S.D., for defendant First Federal Sav. Bank of South Dakota.

Gregg S. Greenfield, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S.D., for defendant Campbell Supply Co.

Jon Haverly, Sioux Falls, S.D., for defendant Vern Waltjer Const.

Scott Perrenoud, Fisher Swanson Hughes, Sioux Falls, S.D., for defendant First Interstate Bank of South Dakota, N.A.

John C. Quaintance, Quaintance, Johnson, Nadolski & Starnes, Sioux Falls, S.D., for defendant Vrooman Floor Covering, Inc.

Don Rote, pro se.

Richard L. Travis, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for defendant Sears Contract Sales.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a Motion of Defendant First Interstate Bank of

South Dakota, N.A. [hereinafter "First Interstate Bank"], for Summary Judgment Concerning Mortgage Lien Extent, Validity and Priority filed by Sioux Falls Attorney Scott Perrenoud. A resisting response was filed by Defendant Vrooman Floor Covering, Inc. [hereinafter "Vrooman Floor Covering"], by Sioux Falls Attorney John C. Quaintance in the form of a Cross Motion for Summary Judgment. A pre-trial conference was held April 23, 1992, and the Motion for Summary Judgment was granted in part, but as to mechanic's lien claimants Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, the matter was taken under advisement and the parties were provided an opportunity to submit briefs. The issue to be decided is whether South Dakota's mortgage and mechanic's lien statutes contained in Chapter 44–9 of the South Dakota Code grant all subsequent mechanic's lien claimants priority over a previously perfected mortgage when an unrelated mechanic's lien attaches before the mortgage is perfected. The Court issues this ruling which shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

## PROCEDURAL BACKGROUND

On March 23, 1992, the Court heard objections to a Notice of Proposed Action/Sale of Property Free and Clear of Liens and Interests filed by the Chapter 7 Trustee. Since there was no disputing the fact that First Federal Savings Bank of South Dakota held a superior, valid, first mortgage against the subject property, all parties agreed to permit an interim disbursement of sale proceeds to satisfy its claim. The remaining claimants agreed to resolve their priority conflicts at trial. The Court approved this agreement, subsequently entered an order confirming the sale, and then entered its order for a pre-trial conference requiring the parties to submit pre-trial motions for hearing.

Consistent with this directive, second mortgagee First Interstate Bank filed its motion for summary judgment concerning the extent, validity, and priority of its mortgage held against the subject property. Mechanic's lien claimant Vrooman Floor Covering filed a cross-motion for summary judgment. On April 23, 1992, a pre-trial conference was held and the Court made the following determinations:

- First Interstate Bank was entitled to summary judgment against mechanic's lien claimant Vern Waltjer, d/b/a Vern Waltjer Construction,[1] since the mechanic's lien statement filed by Vern Waltjer was improperly verified.[2] Failure to follow the technical, statutory requirements invalidated the lien and forced this claimant to forfeit all interest in sale proceeds.

- First Interstate Bank was entitled to summary judgment against eight other mechanic's lien claimants since they failed to appear at the pre-trial conference and failed to file and serve a response to the motion for summary judgment.[3]

- First Interstate Bank's motion as to Don Rote, d/b/a Rote Electric, and Vrooman Floor Covering and the Cross Motion of Vrooman Floor Covering were taken under advisement.

- All other parties in interest who failed to appear at the pre-trial conference were

---

1. Vern Waltjer, d/b/a Vern Waltjer Construction, is one of two entities which provided services to the real property before First Interstate Bank's mortgage was recorded but did not file any lien statement until after recordation. The second entity is Campbell Supply Company.

2. The verification to Waltjer's mechanic's lien statement was defective under S.D.C.L. § 44–9–16 because Vern Waltjer signed both as the affiant lien claimant and as the administrator of the oath to the lien claimant. This renders the lien statement defective and eliminates Waltjer's

claim to the sale proceeds. *Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 232 N.W.2d 76 (1975).

3. Local Bankruptcy Rule No. 304(A) states, "A notice of hearing on motion or notice of proposed action shall clearly state the time and deadline date for filing a response. A notice of hearing on motion or time for filing objection to proposed action shall include a statement indicating that if no response is filed within the time allowed, the Court will grant the relief requested...."

in default and prevented from making any further claims against the sale proceeds.

At the conclusion of the proceeding, the remaining claimants with an interest in the distributive priority of sale proceeds were First Interstate Bank, Vrooman Floor Covering, Sears Contract Sales, Don Rote, d/b/a Rote Electric, Campbell Supply Company, and the Chapter 7 Trustee.

## FACTS

On February 16, 1989, Debtor executed and delivered a real estate mortgage in the amount of $130,000 to First Federal Savings Bank [hereinafter "FFSB"]. The mortgage, recorded March 7, 1989, was secured by Debtor's residential real property and miscellaneous personalty including kitchen appliances, window and floor treatments, and light fixtures.[4]

From July 27, 1990, through December 18, 1990, Campbell Supply Company [hereinafter "Campbell Supply"] provided Debtor an open account for products and supplies used to construct the residential property mortgaged to FFSB. Campbell Supply filed a Materialman's/Mechanic's Lien on February 13, 1991, in the amount of $8,442.43 plus interest.[5]

On August 27, 1990, Debtor executed and delivered to First Interstate Bank an Advance Line Agreement and Mortgage secured by a second mortgage lien in all the property subject to the Trustee's Notice of Proposed Action. The mortgage was recorded August 28, 1990, in the Minnehaha County Register of Deeds Office.

In addition to the first and second mortgages and the mechanic's lien filed by Campbell Supply, numerous additional mechanic's liens and encumbrances were filed against the subject property to secure indebtedness:

- Mechanic's Lien filed April 4, 1991, executed by Lyle J. Anderson, lien claimant, in the amount of $676.23.
- Mechanic's Lien filed April 18, 1991, executed by Vern Waltjer Construction,

lien claimant, in the amount of $2,248.50 plus interest.
- Mechanic's Lien filed June 18, 1991, executed by Bill Mathers Plumbing, Inc., lien claimant, in the amount of $4,632.25 plus interest.
- Mechanic's Lien filed June 20, 1991, executed by Don Rote, d/b/a Rote Electric, lien claimant, in the amount of $2,976 plus interest.
- Mechanic's Lien filed June 25, 1991, executed by Adrian Sod, Inc., lien claimant, in the amount of $5,679 plus interest.
- Mechanic's Lien filed June 27, 1991, executed by Landscape Garden Centers, lien claimant, in the amount of $3,341.52 plus interest.
- Mechanic's Lien filed July 1, 1991, executed by Don's Custom Cabinetry, Inc., lien claimant, in the amount of $9,419.16 plus interest.
- Mechanic's Lien filed August 8, 1991, executed by Mahlander's, Inc., lien claimant, in the amount of $5,290.81 plus interest.
- Mechanic's lien filed August 22, 1991, executed by Vrooman Floor Covering, Inc., lien claimant, in the amount of $4,730.24 plus interest.

On December 2, 1991, the Chapter 7 Trustee filed a Complaint to Sell Property of the Estate Free and Clear of Liens and Interests. The action proposed to sell the real property and miscellaneous personalty subject to the mortgages and liens described above.

FFSB filed an answer requesting adequate protection from the Court via an order allowing its lien to attach to the proceeds of the sale and urging the Court to grant the Trustee's motion. Campbell Supply also sought attachment to sale proceeds stating that except for real estate taxes and FFSB's mortgage, "the mechanics' lien holders have priority over any other lien or interest in the . . . real estate and

---

**4.** On October 2, 1991, FFSB filed a lis pendens against Debtor and all subsequent lien claimants.

**5.** The outstanding balance due Campbell Supply as of March, 1992, was $10,098.31 with interest accruing at a daily rate of $4.16.

that as of July 27, 1990, First Interstate Bank was aware or reasonably should have been aware of visible improvements to the above-referenced property." Campbell Supply believes that all mechanic's lien holders, regardless of when lien statements were filed, are collectively entitled to priority over First Interstate Bank's mortgage by virtue of Campbell Supply's lien which arose by operation of law on July 27, 1990—approximately one month before First Interstate Bank's mortgage was recorded.

First Interstate Bank filed an answer requesting the Court to determine the extent, validity, and priority of its lien on the sale proceeds and further requesting payment of all remaining proceeds after reasonable costs of the sale had been deducted and FFSB's claim satisfied. This mortgagee believes its position is "superior to all other liens and interests which the Chapter 7 Trustee seeks to sever ..., except the first mortgage interest of First Federal Savings Bank."

Vern Waltjer filed a separate answer requesting the Court to approve the sale and determine that he had a valid lien subject only to real estate taxes and FFSB's mortgage. By way of affirmative defense, Waltjer alleged that he held a lien equal in priority with all other mechanic's liens and that collectively the mechanic's liens were "superior in right to any other lien except that of the county for taxes and the mortgage" of FFSB.

On March 23, 1992, a hearing on Trustee's Notice of Proposed Action was held, at which time, FFSB, First Interstate Bank, Campbell Supply, Vern Waltjer Construction, and Vrooman Floor Covering appeared by their attorneys of record. The parties stipulated with the Trustee for entry of an order and judgment permitting the sale of the property free and clear of liens and interests and for interim disbursement of proceeds to cover the first mortgagee's claim, the real estate broker's commission, pro-rated real estate taxes, and other miscellaneous costs of closing. The Judgment Confirming Sale of Property Free and Clear of Liens and Interests was entered March 24, 1992. The judgment also ordered the remaining claimants to file statements of claims to facilitate the determination of rights in and to the remaining sale proceeds prior to the trial date of April 23, 1992.

At the request of several lien claimants, the Court issued an order for a pre-trial conference. All pre-trial motions were to be scheduled and heard at the same time. In response, First Interstate Bank filed a motion on April 14, 1992, for summary judgment concerning the extent, validity, and priority of its mortgage against all defendants named in the Trustee's adversary action. The Court granted summary judgment as to all defendants except Vrooman Floor Covering and Don Rote, d/b/a Rote Electric. The Court reserved its ruling as to these two claimants.

### ISSUE

This issue raises two questions: when do mechanic's liens attach and how are they prioritized? The Court must determine whether a mechanic's lien filed subsequent to a properly recorded mortgage relates back to a separate mechanic's lien which attached before the mortgage and gives *all* mechanic's lien claimants a superior position over the mortgagee for purposes of receiving sale proceeds.

First Interstate Bank believes its mortgage position is superior to all mechanic's lien claimants except Campbell Supply. Mechanic's lien claimants Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, believe their position is superior to First Interstate Bank by virtue of Campbell Supply's earlier lien attachment.

South Dakota's mortgage and mechanic's lien statutes found in Chapter 44 of the South Dakota Code govern resolution of this issue.

### MECHANIC'S LIEN LAW

#### A. The Mechanic's Lien

Laws concerning mechanic's liens seek to provide security or protection to persons who improve the property of others by furnishing materials and labor. *Lytle v.*

*Morgan,* 270 N.W.2d 359, 361 (S.D.1978), *citing F.H. Peavey & Co. v. Whitman,* 82 S.D. 367, 146 N.W.2d 365 (1966); *City Lumber & Supply Co. v. Fisher,* 256 Wis. 402, 41 N.W.2d 285 (1950); 53 Am.Jur.2d Mechanics' Liens §§ 1, 6, and 19. A mechanic's lien is a security interest which helps to satisfy a debt. The raison d'être of this protection is to permit those who provide work or materials for real property improvements a fair opportunity to satisfy their unpaid bills out of the real property. Nelson & Whitman, *Financing Real Estate Construction* § 12.4, at 860, 861 (2d student ed.1985); *Canvasser Custom Builders, Inc. v. Seskin,* 38 Mich.App. 643, 196 N.W.2d 859 (1972). The lien attaches in favor of those who furnish materials and services for the improvement. Robert Dugan, *Mechanic's Liens for Improvements on Real Property,* 25 S.D.L.Rev. 238, 245 (1980).

Every state has legislation concerning mechanic's liens, but because the liens are statutory, the laws are varied in both provision and in judicial construction. Nelson & Whitman, *Financing Real Estate Construction* § 12.4, at 860-61. In terms of priority provisions, however, state laws seem to fit one of three distinct types of priority schemes. *Id.* It is helpful to identify these types of legislation to understand which priority design South Dakota has enacted.

The first type of legislation establishes lien priority at the time building construction begins. *Id.* at 864. "When the lien is perfected by the giving of appropriate notice, ... its date for priority purposes generally relates back to some earlier time.... Under this view, it is immaterial whether the particular lienor did his work before or after the mortgage was recorded." *Id.* at 861, n. 24. Priority is based upon the date when the project first begins as a whole. About half of the states have this type of priority scheme. *Id.* at 861. The second most popular priority scheme establishes lien priority when the particular lienor begins to provide services or furnish materials. *Id.* It is the individual lienor's actions that trigger priority rather than an original start-up date of an entire construction

project. The third priority scheme used by approximately one-half dozen jurisdictions establishes lien priority when the claim is filed. *Id.* at 864–65.

### B. Mechanic's Lien Attachment & Priority Under South Dakota Law

In South Dakota, a mechanic's lien will arise by one of two methods: either by contract or by operation of law. S.D.C.L. § 44–1–4. If a contract exists, the mechanic's lien secures the contract price of the improvement. S.D.C.L. § 44–9–6. If there is no contract, the lien arises by operation of law in which case the lien secures the reasonable value of the work furnished or performed. *Id.* A lien created by operation of law does not arise until the time the act "ought" to be performed. S.D.C.L. § 44–1–4. Work "ought" to be performed or services "ought" to be provided only "at the request of the owner or his duly authorized agent or representative ..., or of any contractor or subcontractor." S.D.C.L. § 44–9–1.

Once a request has been made, the lien will attach when the first item of material or labor is actually furnished by the lien claimant. S.D.C.L. § 44–9–7. The individual lienor's initiating activity is emphasized by the statutes and becomes a significant event since attachment only occurs when the individual lienor provides labor, services, or material—not when some other lienor responds to an owner's request for work or services. Once lien attachment occurs, priority is triggered. These two events are closely related and the mechanic's lien achieves an "extremely high priority by reason of attachment alone." Dugan, 25 S.D.L.Rev. at 254.

South Dakota's lien priority scheme is similar to the second method described above, since priority is established when the lienor furnishes the first item of labor or supplies. The Code combines attachment and priority language together to illustrate the close connection and formulate our priority scheme. "From the time the first item of material or labor is furnished upon the premises by the lien claimant,"

the mechanic's lien is in effect and has priority over other mortgages or encumbrances "not then of record...." S.D.C.L. § 44–9–7.[6] Other Code sections support this priority scheme. Section 44–9–8 states that as against a mortgage, no lien shall attach prior to the actual and visible beginning of the improvement.[7] Section 44–9–1(1) repeats the message by stating that any contractor or subcontractor who furnishes labor or materials at the request of a property owner or his authorized representative for the development, erection, alteration, or repair of any building shall have a first lien upon the property prior and superior to all other liens except those existing liens, mortgages, or other encumbrances then of record from the time the first item of material or labor is furnished. These statutes clearly intend lien attachment and priority to be closely related in that 1) attachment occurs only when an individual lienor actually and visibly begins an improvement; 2) priority is determined at the time of attachment; and 3) a lien that has attached will obtain a superior priority over mortgages and encumbrances not yet of record.

Because lien priority is closely related to lien attachment, and because a lien attaches only when the individual lienor provides the first item of labor, services, or materials, it is clear that lien claimants who attach subsequent to earlier mechanic's liens are not entitled to "tack on" and "relate back" to different, earlier lien claimants in order to surpass intervening mortgagees and hold a lien position superior to the mortgagees. This is the general rule. There is one exception, and that is when a claim is filed against a mine, an oil well, a gas well, or a spring. S.D.C.L. § 44–9–9. If the lien or claim is filed against a mine, oil well, gas well, or spring, then all liens are deemed concurrent and all claimants will be paid from the sale proceeds on a pro rata basis. *Id.* No other

types of mechanic's lien claims attach concurrently.

### C. Technical Requirements of Mechanic's Liens in South Dakota

A mechanic's lien is created when the first materials or labor are furnished, without any necessity of filing. This is part of the favorable protection and security given to mechanic's lien claimants. But the lien ceases to exist at the end of 120 days after the last date of work or furnishing of materials unless a lien statement is filed within that time with the register of deeds of the county in which the improved premises are located. S.D.C.L. § 44–9–15. The 120–day rule has been the source of some litigation and confusion, especially when the same contractor has provided work over a long period of time or pursuant to several separate contracts.

■ This Court clarified the 120–day filing rule in *In re Sepco, Inc.*, 36 B.R. 279 (Bankr.D.S.D.1984), by holding that a lien claimant may file one lien statement to include all items where the process of construction and delivery of items is one "reasonably" continuous transaction:

> Although it is not proper to take several separate contracts together to extend the time to file a mechanic's lien pursuant to S.D.C.L. § 44–9–15 (1983)[,] where the process of construction and delivery of items is reasonably continuous, a single lien statement may be made to include all items contributing to the continuous transaction.

*Id.* at 283, *citing Wefel v. Harold J. Westin & Assoc., Inc.*, 329 N.W.2d 624, 626–28 (S.D.1983); *Big Sioux Lumber Co. v. Miller*, 57 S.D. 506, 234 N.W. 31, 34 (1930); *Botsford Lumber Co. v. Schriver*, 49 S.D. 68, 206 N.W. 423, 426 (1925). If the work is not reasonably one continuous transac-

---

**6.** In other words, if a mortgage *is* of record, the mechanic's lien does not have priority.

**7.** One exception to the "actual and visible" standard used to trigger lien attachment exists where there is a contract between the property owner and lien claimant. Under S.D.C.L. § 44–

9–8, an individual who has obtained a contract for the furnishing of labor, skill, material, etc., may file a statement describing the nature of the contract before actually beginning the improvement and that filing will act as notice of the lien.

tion or if the work is provided pursuant to separate contracts, the total time span cannot be added together to enlarge the time for filing a lien statement:

Where labor or materials are furnished under separate contracts, the contracts cannot be tacked together so as to enlarge the time for filing a lien for what was done or furnished under either, but a lien must be filed for what was done or furnished under each contract within the statutory period after its completion.

*F.H. Peavey & Co. v. Whitman,* 82 S.D. 367, 146 N.W.2d 365 (1966), *citing* 57 C.J.S. Mechanics' Liens § 144c(2).

■ In addition to being timely filed, the lien statement must show some detail concerning the claimant and the claim. The following information is necessary:

1. A notice indicating the claimant's intent to claim and hold a lien, including the amount of the lien.

2. A statement that the amount is due and owing for the labor, skill, services, or materials provided, along with a description of the specific work done or the materials supplied.

3. Both the claimant's name and address and the name of the individual for whom the services were furnished.

4. The start and end dates of the claimant's contribution.

5. A description of the property being charged.

6. The owner's name and address as of the time the statement is made.

7. An itemized statement of the account upon which the lien is claimed.

S.D.C.L. § 44–9–15. Itemization means the claimant must "set down by items; state or describe by particulars, as to demand an itemized bill." *Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 232 N.W.2d 76, 81 (1975), *quoting* 48 C.J.S. Item p. 788. The itemization is sufficient if an "ordinarily intelligent and careful person" is aware of the material supplied to the project. *R & L Supply, Ltd. v. Evangelical Lutheran Society,* 462 N.W.2d 515 (S.D.1990).

Next, the lien statement must be verified "by the oath of some person shown by such verification to have knowledge of the facts stated." S.D.C.L. § 44–9–16. Before filing the statement, the lien claimant must send a copy of the statement to the property owner by registered or certified mail. S.D.C.L. § 44–9–17. The statement is then filed in both the mechanic's lien register and mortgage index. S.D.C.L. § 44–9–18. Once the lien has been filed, the claimant may enforce the lien within six years.

■ Substantial compliance with all technical requirements is important as it protects "others with an interest in the property from fraud and imposition." *H & R Plumbing & Heating, Inc. v. FDIC,* 406 N.W.2d 151, 153 (S.D.1987), *citing Ringgenberg v. Wilmsmeyer,* 253 N.W.2d 197 (S.D.1977). If the lien statement is inadequate, the lien is invalid. *Id.; R & L Supply, Ltd. v. Evangelical Lutheran Society,* 462 N.W.2d at 519.

## ANALYSIS

■ In this case, claimants Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, perceive South Dakota's statutes as allowing one lienor to attach its lien on behalf of all future mechanic's lien claimants who are remotely related to one continuous construction project in order to secure a position superior to intervening mortgages or encumbrances. This perception contradicts the plain, common-sense meaning of the statutes.

Both mechanic's liens arose by operation of law since the record does not reflect any contract existed between Debtor and either mechanic's lien claimant. S.D.C.L. § 44–1–4. And if a lien is created by operation of law, it does not arise until the service or work "ought" to be performed. *Id.* In this case, services "ought" to have been performed and were performed roughly in the Spring/Summer of 1991. That is the time when the liens arose by operation of law. No credible argument exists to conclude their services "ought" to have been provided when Campbell Supply was providing its services; therefore, no credible argument exists that these two liens arose when Campbell Supply's lien arose.

A mechanic's lien attaches when the lien claimant provides the first item of material or labor. S.D.C.L. § 44–9–7. The individual lien claimants are Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, not Campbell Supply. Mechanic's lien claimant Campbell Supply had a lien that attached July 27, 1990, but the claims of Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, did not attach until they individually supplied their first item of material or labor. Although the specific dates are not on this record, both claimants admit services were first provided after First Interstate Bank's August 27, 1990, recording of the second mortgage. Furthermore, mechanic's lien work must be done at the request of the owner. S.D.C.L. § 44–9–1. Such a request was made to Campbell Supply in July, 1990, but the owner's requests to Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, were not made until sometime in 1991.

For all these reasons, neither lien claimant can persuasively argue its lien arose concurrently or should be merged with the pre-mortgage lien of Campbell Supply. State law clearly defines separate attachment times for separate mechanic's liens. And in this state, attachment is closely linked to priority.

In making its priority argument, Vrooman Floor Covering contends that the facts of this case are the same as a hypothetical situation described by an author analyzing South Dakota's mechanic's lien statutes. The hypothetical is as follows:

> Case 7: Claimant A commences work on site; bank makes a loan, attaches, and records its mortgage; Claimant B then furnishes additional materials or services to the job.

Dugan, 25 S.D.L.Rev. at 257. The author did not believe South Dakota statutes or case law dealt with the priority conflict presented in this scenario, so the author simply identified one resolution used by a neighboring state: "In Case 7, the Minnesota Supreme Court held that the priority of Claimant A (achieved by attachment) extends to subsequent subcontractors." *Id.* The holding was from a 1904 Minnesota case affirming the lower court's decision to subordinate a mortgage to all lien claimants who contributed to a building construction project. *City of Ortonville v. Geer,* 93 Minn. 501, 101 N.W. 963 (1904). Vrooman Floor Covering urges this Court to fashion a similar holding in order to provide a favorable theory of recovery. While the hypothetical fits the facts of this case, the Minnesota resolution does not. This Court must use South Dakota laws and a common-sense interpretation of those laws rather than grabbing case law from a neighboring state which apparently emphasizes a different priority scheme. "[C]ase law is unreliable in the field [of mechanic's liens] because the decisions are meaningful only with reference to the particular statute under which each arose and the precise language of the act at that time." Nelson & Whitman, *Financing Real Estate Construction* § 12.4, at 861.

Notwithstanding the apparent differences between Minnesota's and South Dakota's priority schemes, South Dakota has, in fact, enacted a very narrow provision allowing "Claimant A's" lien attachment to extend to "Claimant B." The provision allows all liens and claims against mines, oil wells, gas wells, or springs to be concurrent so that all claimants in this category may share a pro rata distribution of sale proceeds. S.D.C.L. § 44–9–9. If the legislature intended to enlarge this priority provision to other types of lien claims, it would have. It did not, however. And neither Vrooman Floor Covering nor Don Rote, d/b/a Rote Electric, fits within this narrow statute allowing concurrent liens.

Moreover, the author's statement indicates the Minnesota Supreme Court made the extension to "subsequent subcontractors." A subcontractor is "one who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor." Black's Law Dictionary 1277 (5th ed.1979). The record in ths case does not indicate any general contractor-subcontractor relationship among any parties. Neither Vrooman Floor Covering nor Don Rote, d/b/a Rote Electric, subcontracted with Campbell Supply to perform services or furnish materials.

Based on South Dakota's attachment provisions, it is without hesitation that the

Court finds that the mechanic's liens of both Vrooman Floor Covering and Don Rote, d/b/a Rote Electric, attached on the respective dates when each claimant first provided services, labor, or materials, not when Campbell Supply first provided services, labor, or materials.

It follows, then, that for priority purposes, First Interstate Bank has a position superior to these two mechanic's lien claimants. The statutes are clear that a mechanic's lien only has priority over mortgages or encumbrances not yet recorded at the time when a mechanic's lien attaches. S.D.C.L. § 44–9–7. Obviously, First Interstate Bank's mortgage *was* of record at the time these two mechanic's liens attached. Therefore, these mechanic's liens do not have priority status.

■ This outcome is also supported by the state's insistence for substantial compliance with the lien statement's technical requirements. A claimant must provide specific itemization of services and work provided, identify amounts presently due and owing, describe the services given, and state an intent to hold a lien. S.D.C.L. § 44–9–15. In this case, it was not possible for Campbell Supply to substantially comply with the informational requirements necessary to include unknown, unrelated, future mechanic's lienors such as Vrooman Floor Covering or Don Rote, d/b/a Rote Electric, at least not without having some type of subcontractual relationship. Furthermore, the Court was obligated to invalidate the lien statement of Vern Waltjer for failure to follow the technical requirement concerning verification. The Court would not have rendered this otherwise valid lien technically defective if some provision or justifiable mechanism allowed Vern Waltjer to obtain priority status by virtue of Campbell Supply's lien statement. But such a justification did not exist. Neither does one exist to allow Vrooman Floor Covering or Don Rote, d/b/a Rote Electric, to "piggyback" onto Campbell Supply's favorable lien position.

## CONCLUSION

This Court rejects the argument that mechanic's liens filed subsequent to a properly recorded mortgage relate back to a separate, unrelated mechanic's lien which attached before the mortgage so that all mechanic's lien claimants hold a collectively superior position over the mortgagee for purposes of receiving sale proceeds. South Dakota statutes do not empower one mechanic's lien to act as a blanket attachment for all other mechanic's lien claimants. This holding is consistent with the overall purpose behind mechanic's lien laws which is to provide protection and security to the lienor to help satisfy a debt. In this case, neither lienor needed protection to help satisfy a debt until the debt became due, a date subsequent to the mortgage recordation. As noted in *Sioux Falls Const. Co. v. Bruns*, 420 N.W.2d 29, 31 (S.D.1988):

> [T]he court must take the statute[s] as it finds ... [them] and cannot depart from the plain meaning of the words.... [citation omitted] The court cannot read into ... [the] statute[s] a theory of recovery which is at variance with the statute[s] ... [themselves] and has no power to extend the mechanic's lien law to cases beyond its obvious designs and plain requirements. Any expansion of our current mechanic's lien law should be left to our legislature.

The Court cannot construe the state's provisions on mechanic's liens in favor of Vrooman Floor Covering and Don Rote, d/b/a Rote Electric. Summary judgment is granted to First Interstate Bank against both these mechanic's lien claimants and Vrooman Floor Covering's Cross Motion for Summary Judgment is denied.

The Court will enter an appropriate order.

ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF FIRST INTERSTATE BANK AS AGAINST VROOMAN FLOOR COVERING, INC., AND DON ROTE, d/b/a ROTE ELECTRIC, AND ORDER DENYING VROOMAN FLOOR COVERING, INC.'S, CROSS MOTION FOR SUMMARY JUDGMENT

The above-entitled matter having come before this Court, the Honorable Peder K.

Ecker, Bankruptcy Judge, presiding, on April 23, 1992, for hearing on Defendant First Interstate Bank of South Dakota, N.A.'s, Motion for Summary Judgment Concerning Mortgage Lien Extent, Validity and Priority and Defendant Vrooman Floor Covering, Inc.'s, Cross Motion for Summary Judgment; and the Court having taken this matter under advisement; it is hereby

ORDERED that pursuant to the Memorandum Decision entered this date, First Interstate Bank of South Dakota has a properly recorded mortgage that has priority over subsequently filed mechanic's liens filed by Vrooman Floor Covering, Inc., and Don Rote, d/b/a Rote Electric; it is further

ORDERED that First Interstate Bank of South Dakota's Motion for Summary Judgment Concerning Mortgage Lien Extent, Validity and Priority is granted as against Vrooman Floor Covering, Inc., and as against Don Rote, d/b/a Rote Electric; and it is further

ORDERED that Vrooman Floor Covering, Inc.'s, Cross Motion for Summary Judgment is denied.